## In re CVA GENERAL CONTRACTORS, INC., Debtor.

### No. 99–54520–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 7, 2001.

Charles A. Carlson, III, Law Offices of Charles A. Carlson, III, Harlingen, TX, for Terry Burke.

George S. Drugan, III, LeLaurin & Adams, P.C., San Antonio, TX, for CVA General Contractors, Inc.

Richard E. Hettinger, Davidson & Troilo, San Antonio, TX, for Joe Baker.

Sofia A. Ramon, Atlas & Hall LLP, McAllen, TX, Vicki M. Skaggs, McAllen, TX, for Mt. Hawley Insurance Co.

## MEMORANDUM ON MOTION FOR AUTHORITY TO USE CORPORATE-DEBTOR'S NAME

LEIF M. CLARK, Bankruptcy Judge.

Many insurance disputes caught in the sticky web of bankruptcy law, pit the insurer against the insured. This case does not. Instead, the insurer and the insured are allied. Their foe? A third-party defendant, who is being sued by the insurer (in the name of the insured), and who challenges the insured's capacity to sue the third-party defendant or who at the least wants the insurer's own name, Mt. Hawley Insurance Company, to brightly flash before the eyes of jurors hearing the case.

### BACKGROUND FACTS

In 1998, Terry Burke filed a personal injury suit against CVA General Contractors, styled *Terry Burke v. CVA General Contractors, Inc., Manuel Hinojosa Architects, The City of Port Isabel, and WCS Structural Engineers*, in the 197th Judicial District Court of Cameron County, Texas, Cause No. 98–114526–C ("State Court Lawsuit"). The injury giving rise to the State Court Lawsuit occurred on March 13, 1997, when CVA was still insured under a "general liability" insurance policy with Mt. Hawley ("CVA Insurance Policy"). Premiums due for the policy period in question (July 12, 1996 to July 12, 1997) were paid up, so there is no question about coverage as to the injury. Mt. Hawley did not (and does not) contest its obligation to afford coverage to CVA.

In April 1999, Mt. Hawley retained the law firm of Atlas & Hall, L.L.P. ("Atlas & Hall") to defend CVA in the State Court Lawsuit. Atlas & Hall mounted the requisite defense, and in addition, initiated a third-party action on behalf of CVA

against Joe Baker d/b/a Coastal Contractors, Inc. ("Third Party Action"), seeking contractual indemnity for any liability that might ultimately be adjudged against CVA in the underlying lawsuit by Burke. This third-party action was initiated pursuant to the terms of the insurance policy, according to which Mt. Hawley is subrogated to any rights of recovery that CVA might have against another who may ultimately be held liable for the injury, as and when Mt. Hawley is called upon to pay the damages ultimately adjudged.

On October 19, 1999, while these suits were still pending, CVA filed for chapter 7 bankruptcy relief, triggering liquidation of all of CVA's assets. Both the State Court Lawsuit and the Third Party Action were abated by the bankruptcy filing, in response to the bankruptcy stay. Burke (the state court plaintiff) then moved for relief from stay to pursue his claim at least to the limits of insurance coverage. On May 8, 2000, an order granting modification of the stay was entered, permitting the relief sought by Burke.

On July 28, 2000, the chapter 7 trustee filed a motion to abandon the estate's interest in

> ... the litigation styled *Terry Burke v. CVA General Contractors, Inc., Manuel Hinojosa Architects, The City of Port Isabel, and WCS Structural Engineers,* Cause No. 98–114526, in the 197th Judicial District Court of Cameron County, Texas, including, but not limited to, the Third Party Action filed by the debtor against third party defendant Coastal Contractors and/or Joe Baker d/b/a Coastal Contractors.

*See Abandonment Order.* The trustee's motion stated as grounds for abandonment that the estate had only a nominal interest in both the State Court Lawsuit and the Third Party Action. No creditors objected, so the court entered an order granting the trustee's motion ("Abandonment Order").

After the Abandonment Order was entered (on August 22, 2000), Joe Baker (the third-party defendant) filed a motion in state court to "show authority," arguing that Mt. Hawley no longer had authority to proceed against Baker in CVA's name. He alleged two reasons: first, Baker claimed that the rights and obligations of CVA and Mt. Hawley under the CVA Insurance Policy (including the right to subrogation) "ceased to exist" when the chapter 7 trustee failed to "assume" the insurance policy under § 365 of the Bankruptcy Code; second, as an alternative argument, Baker argued that the *de facto* dissolution of CVA as a result of the chapter 7 bankruptcy filing destroyed Mt. Hawley's legal right to subrogation, effectively denying Mt. Hawley the standing to pursue the third-party action against Baker. In response to Baker's motion, CVA and Mt. Hawley (both represented by Atlas & Hall) filed a motion in this court, seeking to obtain authority to "use corporate debtor's name."

At the conclusion of the hearing on Mt. Hawley's motion, this court ruled from the bench, rejecting Baker's arguments and granting the motion of CVA and Mt. Hawley. The court reserved the right to issue a written opinion on what appears to be an issue of first impression among courts in the Fifth Circuit—whether the subrogation rights of an insurance company pursuant to an insurance contract survive a chapter 7 liquidation of the insured, and if so, in what form.

ISSUES

The overriding issue in this case is whether Mt. Hawley can continue to pursue its third party action against Baker in the name of CVA. The resolution of this issue depends upon whether 11 U.S.C. § 365 applies in this case and whether the

alleged *de facto* dissolution of CVA destroyed Mt. Hawley's right to subrogation. We will consider these two issues in turn.

### ANALYSIS

**1. Have the rights and obligations of CVA and Mt. Hawley "ceased to exist" as a result of the chapter 7 trustee's failure to assume the insurance policy under 11 U.S.C. § 365(a)?**

Section 365(a) of the Bankruptcy Code provides:

> Except as provided in sections 756 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a). If a chapter 7 trustee fails to assume or reject an executory contract or unexpired lease within 60 days of the bankruptcy filing, the contract or lease is deemed rejected. *See* 11 U.S.C. § 365(d)(1). Relying on this provision, Baker argues that CVA's obligations and Mt. Hawley's rights under the policy "ceased to exist" because the chapter 7 trustee failed to assume or reject the CVA Insurance Policy within 60 days of CVA's chapter 7 filing.

Baker's argument is fatally flawed for three reasons: (1) rights and obligations under a contract do not "cease to exist" just because the contract is statutorily rejected under § 365; (2) the insurance contract in this case was not "executory" in nature as of the filing; and (3) the expiration of an insurance policy period does not terminate or forfeit an insured's or insurer's rights and obligations under a policy, if those rights and obligations arose prior to the policy's expiration.

### A. *Rejection does not cause a contract to "cease to exist."*

 Baker's argument fails first and foremost because Baker does not under-

stand the meaning of rejection. The Fifth Circuit, in *Matter of Austin Development Co.*, held that the rejection of an executory contract, whether by intention or by operation of law, does *not* terminate or forfeit the nondebtor parties' rights under the contract. Said the court,

> [t]hroughout § 365, rejection refers to the debtor's decision not to assume a burdensome lease or executory contract. Section 365(g) states that rejection of a [contract or] lease "constitutes a breach" except as provided in subsections (h)(2) and (i)(2). Three circuits, including this one, have held that this language does not mean that the executory contract or lease has been terminated, but only that a breach has been deemed to occur. *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir.1993) ("to assert that a contract effectively does not exist as of the date of rejection is inconsistent with deeming the same contract breached"); *In re Modern Textile, Inc.*, 900 F.2d 1184, 1191 (8th Cir.1990); *Leasing Service Corp. v. First Tennessee Bank, Nat'l Ass'n*, 826 F.2d 434, 436–37 (6th Cir.1987).

19 F.3d 1077, 1082 (5th Cir.1994) (Jones, J.). The court further noted that, while only the trustee may reject a contract, termination of the contract can only occur at the option of the nondebtor party to that contract. *Id.* The rule is important because otherwise rejection could result in the *de facto* avoidance of third-party property interests, such as a bank's security interest in a leasehold, for example. *Id.* In addition, were rejection to equal termination, then the terms of the agreement itself would no longer serve as a proper measure for damages, a prospect that the Fifth Circuit has already anticipated—and disposed of. *Id.* The Fifth Circuit wisely held that rejection has an important but appropriately narrow function: it relieves the estate and nondebtor parties from *fu-*

ture performance obligations and, by accomplishing a breach, it triggers a dischargeable, unsecured, pre-petition claim against the estate.

 *Austin Development* effectively disposes of Baker's "cease to exist" argument in this case. The rights and obligations of CVA and Mt. Hawley spelled out in their insurance contract did *not* terminate simply by virtue of the chapter 7 trustee's failing to assume the CVA Insurance Policy.[1] Nor has Mt. Hawley sought to terminate the CVA Insurance policy.[2] Thus, the rights and obligations of CVA and Mt. Hawley spelled out in the insurance policy have not "ceased to exist." To that extent that talk of rejection of this insurance contract is even applicable (the next section explains why it is not), all that rejection accomplished was to relieve Mt. Hawley of any *further* obligation to furnish coverage for any *future* period from and after the date of the filing of the bankruptcy case, and to afford to Mt. Hawley (if it so chose) the right to file a proof of claim for any unpaid premium obligations due as of the

bankruptcy filing. *See Austin Development, supra,* at 1082. That is the meaning of rejection. Nothing more.

**B.** *Contracts that terminate before bankruptcy are not executory anyway.*

 Baker's argument also founders on the facts of this particular case. The CVA Insurance Policy never became an appropriate subject for executory contract analysis in CVA's bankruptcy case because the policy expired before CVA filed bankruptcy.[3] *See e.g., In re Firearms Import and Export Corp.,* 131 B.R. 1009, 1013 (Bankr.S.D.Fla.1991); *Matter of Federal Press Co., Inc.,* 104 B.R. 56, 66 (Bankr. N.D.Ind.1989). Courts reason that, when an insurance contract has been terminated prior to the date of the filing of the petition, there remains no *existing* contract, executory or otherwise, for the trustee to either assume or reject. *See Firearms,* 131 B.R. at 1013; *Federal Press* 104 B.R. at 66 (citing *Greater Kansas City,* 71 B.R. 865, 870 (Bankr.D.Kan.1987), *aff'd. sub.*

---

1. We could as easily say that the contract did not terminate simply because the contract is deemed rejected by virtue of section 365(d)(1), except that it appears from the facts of this case that, as of the bankruptcy filing, there was no contract *in esse* to either assume or reject, because it had terminated on a prospective basis prior to filing. *See* discussion *infra,* Part 1(B).

2. We make this statement only to indicate the congruence of the facts of this case with the analysis in *Austin Development.* In point of fact, Mt. Hawley cannot "terminate" its obligation to insure the Burke claim against CVA because that obligation arose prior to this bankruptcy filing and is unaffected by subsequent events—including the bankruptcy filing. This point is explored in greater detail later in this opinion. *See* discussion *infra,* at Part 1(C).

3. Although the Code does not define the term "executory contract," the Notes of the Committee on the Judiciary describe an executory

contract as one "on which performance remains due to some extent on both sides." S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong & Admin.News 5787, 5844. In addition, many courts have adopted Professor Countryman's definition of an executory contract: "an 'executory contract' is one 'under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *Benevides v. Alexander (In re Alexander),* 670 F.2d 885, 887 (9th Cir.1982) (quoting from Prof. Countryman's article, published at 57 Minn.L.Rev. 439, 460 (1973)); *but see In re El Paso Refinery, L.P.,* 220 B.R. 37, 39 n. 1 (Bankr.W.D.Tex.1998) (citing Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts,* 74 Minn. L.Rev. 227, 228 (1989) (adopting a functional analysis for section 365 which allows for its successful operation with respect to *all* contracts in bankruptcy, thus eliminating the hunt for executoriness)).

*nom. Guaranty Nat'l. Ins. Co. v. Greater Kansas City Transp., Inc.,* 90 B.R. 461, 463 (D.Kan.1988)); *see also In re Waterkist Corp.,* 775 F.2d 1089, 1091–92 (9th Cir. 1985).

Also, an insured's payment of all premiums due under an insurance policy prior to the bankruptcy filing nullifies the "sole basis" for holding an insurance policy to be an executory contract: the continuing obligation of the debtor to make premium payments. *Firearms,* 131 B.R. at 1013. In this case, the relevant policy period[4] for the CVA Insurance Policy (July 1996 through July 1997) expired at least two years prior to the time that CVA filed for bankruptcy, but CVA had already fulfilled its major responsibility under the expired insurance policy for the relevant coverage period—it had paid all the premiums due for the July 1996–July 1997 policy period. Thus, when CVA filed for bankruptcy, there was no extant insurance policy for the chapter 7 trustee to assume or reject. There was certainly a policy to *enforce* on behalf of (and for the benefit of) the estate with respect to those events that occurred within the period of coverage.[5] There was, however, nothing to *assume* (or reject) as of the bankruptcy filing, because future performance obligations no longer existed under the contract as of the date of the bankruptcy filing.

C. *CVA had insurance coverage for the event in question, notwithstanding the bankruptcy filing.*

■ Finally, the rights and duties of CVA and Mt. Hawley arising under the insurance policy did not terminate, even though the insurance policy itself terminat-

ed pre-petition. Section I of the CVA Insurance Policy provides that Mt. Hawley "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We [Mt. Hawley] will have the *right and duty* to defend any 'suit' seeking those damages." CVA Insurance Policy, Section I, Coverage A, ¶ 1(a) (emphasis added). The insurance policy also states that "[t]his insurance applies to 'bodily injury' or 'property damage' only if . . . (2) the 'bodily injury' or 'property damage' occurs during the policy period." CVA Insurance Policy, Section I, Coverage A, ¶ 1(b)(2). These two clauses comport with Texas law, which states that, once it has been established that an injury giving rise to a claim against the insured occurred during the policy period, then the insurer's obligation to provide coverage for that injury survives the expiration of the policy period. *See e.g., Guaranty Nat. Ins. Co. v. Azrock Industries Inc.,* 211 F.3d 239, 248–52 (5th Cir.2000) (applying Texas law) (holding that coverage is triggered in any policy period in which exposure to the cause of the personal injury occurred, even if the harmful effects of the exposure were not diagnosed until after the policy period expired).

In this case, there is no dispute that the injury giving rise the State Court Lawsuit occurred during the July 1996–July 1997 policy period. CVA paid all premiums due and owing for this policy period, and Mt. Hawley cannot (and does not) dispute that it has a duty to defend CVA in the Lawsuit, even though the policy period has long since expired. Mt. Hawley is, in short, acting entirely consistently with its duties and obligations under Texas law.[6]

4. We reiterate that the important inquiry is not whether the policy is available to CVA as of the bankruptcy filing but whether the policy was in effect at the time the insurable claim arose. This point is discussed at greater length *infra,* in Part 1(C) of this opinion.

5. *See* discussion *infra,* Part 1(C) of this opinion.

6. We reach this issue of necessity, to satisfactorily dispose of all arguments both made and implied. It seems unlikely, however, that a

At the end of the day, we have an injury that occurred while CVA was fully insured under its policy of insurance with Mt. Hawley. Though the insurance policy period has long since expired, the parties to the insurance contract are still continuing to dutifully fulfill their rights and obligations that arose during the relevant policy period, as they must under Texas law. The subsequent bankruptcy filing of the insured should not and does not alter or affect this peaceful result.

### 2. Has the "de facto dissolution" of CVA destroyed Mt. Hawley's right to subrogation under the CVA Insurance Policy?

 Baker has a clever alternative argument. He argues that when CVA was liquidated under chapter 7 of the Bank-

ruptcy Code, CVA became a *de facto* dissolved corporation. As a consequence, when the chapter 7 trustee abandoned the estate's rights in the State Court Lawsuit and the Third Party Action, the rights to these actions did not revest themselves in CVA because CVA was no longer around to take the actions.[7] Instead, the actions revested themselves in their "true owner," Mt. Hawley. As the true owner of the actions, Baker concludes, Mt. Hawley must proceed in any affirmative action (such as the Third Party Action against Baker) in its own name.

 The evolution of Baker's argument attacks the very essence of Mt. Hawley's right to subrogation: a subrogee (Mt. Hawley in this case) cannot, in Baker's view, pursue a cause of action in the name of the subrogor (CVA), if the subrogor itself has no cause of action against the third-party (Baker).[8] As a general state-

third-party defendant would ever have any standing to complain that an insurance company should have denied coverage to its insured.

7. The filing of bankruptcy creates an estate. 11 U.S.C. § 541. The debtor's estate encompasses all kinds of property, "including tangible or intangible property, *causes of action* ... and all other forms of property currently specified in section 70a of the Bankruptcy Act ...." H.R.REP. No. 95–595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323 (emphasis added). As a general rule, a debtor may not pursue on its own a cause of action belonging to the estate, unless that cause of action has been abandoned by the trustee. *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir.1985)' (citing numerous cases). When a trustee abandons a cause of action, the cause of action is revested in the debtor as if it was never property of the estate. *See In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990), *cert. granted* 498 U.S. 1081, 111 S.Ct. 949, 112 L.Ed.2d 1038, *aff'd* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (property abandoned as burdensome to estate or of inconsequential value and benefit to estate ceases to be part of bankruptcy estate and reverts to debtor and stands as if no bankruptcy petition were filed); *Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668, 669 (E.D.Pa.

1990); *In re J.A.V.AG., Inc.*, 154 B.R. 923, 926 (Bankr.W.D.Tex.1993). An abandonment of a cause of action relates back to the time of filing of the petition, retroactively making the debtor a proper party. *See Krank*, 109 B.R. at 669 (citing *Riverside Memorial Mausoleum v. UMET Trust*, 469 F.Supp. 643, 644 (E.D.Pa. 1979)); *see also Brown v. O'Keefe*, 300 U.S. 598, 602, 57 S.Ct. 543, 81 L.Ed. 827 (1937); *Bryson v. Bank of New York*, 584 F.Supp. 1306, 1316 (S.D.N.Y.1984). Notwithstanding these well-established rules, Baker argues that the Third Party Action never revested in CVA when the trustee abandoned the action because CVA was no longer in existence, *see infra* note 7.

8. In Texas, subrogation is the substitution of one person in the place of another with reference to a lawful claim of right. *See Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ). The subrogee can bring the cause of action in its own name, or in the name of the subrogor. *Prudential Property and Cas. Co. v. Dow Chevrolet–Olds, Inc.*, 10 S.W.3d 97, 100 (Tex. App.—Texarkana 1999, pet. dism'd). In this case, Mt. Hawley's right to subrogation arises by virtue of a contract (the CVA Insurance Policy), *see Texas Association of School Boards, Inc. v. Ward*, 18 S.W.3d 256, 259

ment of subrogation law, Baker's argument has some force. As the state court of appeals in Houston explained in *Interstate Fire Ins. Co. v. First Tape, Inc.*:

> An insurer's right to subrogation derives from the rights of the insured, and is limited to those rights; there can be no subrogation where the *insured has no cause of action* against the defendant. The subrogees stand in the shoes of the one whose rights they claim, and the extent of the subrogees' remedy and the measure of their rights are controlled by those possessed by the subrogor.

817 S.W.2d 142, 145 (Tex.Civ.App.—Houston [1st Dist.] 1991 writ denied) (citations omitted) (emphasis added); *see also National Union Fire Ins. Co. Of Pittsburgh,* *Pennsylvania. v. John Zink Co.,* 972 S.W.2d 839, 843–44 (Tex.Civ.App.—Corpus Christi 1998, pet. denied).[9]

█ Baker believes that CVA has no cause of action against Baker because CVA no longer exists—it has been dissolved by virtue of the chapter 7 proceeding, according to Baker.[10] When the trustee abandoned the estate's interest in the Third Party Action against Baker (an action which would, in general, revest the abandoned asset in the debtor), there was no "debtor" in existence to "receive" the abandoned asset. CVA has no cause of action against Baker, if CVA did not even exist to receive the Third Party Action upon the trustee's abandonment. Thus, concludes Baker, Mt. Hawley can no long-

(Tex.App.—Waco 2000, rev. denied) (contractual or conventional subrogation, "arises by virtue of an agreement between parties"), which provides that "[i]f the insured [CVA] has rights to recover all or part of any payment we [Mt. Hawley] have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them." *CVA Insurance Policy,* Section IV(8).

9. The right to subrogation is most often destroyed when "an insured settles with or releases a wrongdoer from liability for a loss before payment of the loss has been made by the insurance company." *International Ins. Co. v. Medical–Professional Bldg. of Corpus Christi,* 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.) (citations omitted). A release has not been executed in this case. *See National Union Fire Ins. Co. v. Insurance Co. of N. Am.,* 955 S.W.2d 120, 127 (Tex.App.—Houston [14th Dist.] 1997) (a release must be in writing and must clearly provide that a duty or obligation owed to one party to the release is discharged immediately on the occurrence of a condition), *aff'd,* 20 S.W.3d 692 (Tex.2000).

10. Baker cites *Matter of Liberty Trust,* 130 B.R. 467 (W.D.Tex.1991) for the proposition that the chapter 7 liquidation of CVA effectu-

ated CVA's dissolution. *See id.* at 472. We disagree with the district court's holding that the liquidation of a corporation under chapter 7 accomplishes the dissolution of that corporation. *See N.L.R.B. v. Better Bldg. Supply Corp.,* 837 F.2d 377, 379 (9th Cir.1988) (the claim that "section 727 excludes corporations from discharge because Chapter 7 proceedings effect dissolution is not supported by the terms of the Code."); *see also Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 103 F.Supp.2d 1180, 1183 (N.D.Cal.2000) (same); 6 Collier on Bankruptcy, ¶ 727.01[3] (15th ed. rev.2000) ("After liquidation, any dissolution of the corporation or partnership that the parties desire must be effectuated under state law, since the Code does not provide for dissolution of corporations or partnerships."). Furthermore, even if chapter 7 liquidation did effect the dissolution of CVA, as *Liberty Trust* suggested, Texas corporation law provides that a dissolved corporation continues it corporate existence for a period of three years from the date of dissolution, among other reasons, to prosecute or defend "in its corporate name any action or proceeding by or against the dissolved corporation" and to permit "the survival of any existing claim by or against the dissolved corporation." Tex.Bus. Corp.Act, Art. 7.12A(1)–(2) (West Supp.2001). Thus, upon dissolution, a corporation does continue to exist for a limited time and for limited purposes, an important detail overlooked by *Liberty Trust* and Baker.

er pursue the Third Party Action against Baker in the name of CVA.[11]

■ Baker's argument, though creative, misses the mark. Under Texas law, if a subrogor is a viable legal entity at the time the subrogee brings suit on behalf of the subrogor, then the subrogee is not subsequently barred from maintaining that suit pursuant to those subrogation rights even if the subrogor later becomes a non-viable entity. *Rushing v. International Aviation Underwriters, Inc.,* 604 S.W.2d 239, 241 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.) (citing *Deveny v. Success Co.,* 228 S.W. 295, 296 (Tex.Civ.App.—San Antonio 1921, writ ref'd)). The rationale for this sensible rule is that, once the subrogee insurance company's right to sue on behalf of the subrogor becomes fixed, the subrogee becomes the "real party in interest." *Id.* Once the subrogee becomes the real party in interest, the fate of the subrogor (who only retains a nominal interest in the cause of action, *see Texas Property and Cas. Ins. Guar. Association/Southwest Aggregates, Inc. v. Southwest Aggregates, Inc.,* 982 S.W.2d 600, 603 n. 1 (Tex. App.—Austin 1998, no pet.); *Eakin v. Chandler,* 470 S.W.2d 422, 428 (Tex.Civ. App.—Corpus Christi 1971, writ dismissed)), whether it be liquidation, dissolution or forfeiture, is of little practical or legal consequence. *See Rushing,* 604 S.W.2d at 241.

Baker's request that we focus our attention on CVA's post-liquidation status as a result of the chapter 7 proceeding, rather than the legal status of CVA at the time Mt. Hawley's subrogation rights first matured, is an ill-disguised trap, one that has a facial appeal but no firm grounding in Texas law. We have no need to become entangled in Baker's sophistry. Texas law directs us instead to resolve the current status of Mt. Hawley's subrogation rights by examining the legal viability of CVA at the time Mt. Hawley commenced the Third Party Action against Baker.

■ In this case, we know that Mt. Hawley (in the name of CVA) commenced the Third Party Action against Baker in April 1999, several months before CVA filed for bankruptcy (October 1999). We also know that CVA was a viable legal entity in April 1999.[12] There is a question, however, as to whether Mt. Hawley's right to subrogation had *matured* by April 1999. This question is important because the right to subrogation generally does not arise until the subrogee insurance company has made a payment of loss under an insurance policy, *see Magnolia Pipe Line Co. v. Security Union Ins. Co.,* 37 S.W.2d 1062, 1063 (Tex.Civ.App.—Beaumont 1931, no writ); *Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708, 711 (Tex. App.—Corpus Christi 1992, writ denied); *International Ins. Co. v. Medical–Professional Bldg. of Corpus Christi,* 405 S.W.2d 867, 869 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.).[13] Mt. Hawley has not to date made (and may never have to

---

**11.** Recall again the observation made at the commencement of this decision: Baker hopes to gain traction with a jury by pointing out that the party suing him is some faceless insurance company.

**12.** More to the point, the party with the burden of proving to the contrary (Baker) introduced no evidence to challenge the viability of CVA as a legal entity as of that date. Baker focused his arguments on the *post-bankruptcy* effects of a chapter 7 liquidation on CVA's legal status. April 1999, the date the Third

Party Action was initiated, was *pre-bankruptcy.*

**13.** This general rule applies to both equitable and conventional subrogation cases. *See Esparza v. Scott & White Health Plan,* 909 S.W.2d 548, 551–52 (Tex.App.—Austin 1995, writ denied) ("While an insurance contract providing expressly for subrogation may remove from the realm of equity the question of *whether* the insurer has a right to subrogation, it cannot answer the question of *when* the insurer is actually entitled to subrogation or

make) any payment on an insurance loss relating to the Burke claim against CVA.

■ Like most good rules, the general rule that the right to subrogation does not arise until a payment for loss has been made does have an exception: a defendant who, on payment of plaintiff's claim, would be subrogated to plaintiff's rights against third party, may maintain a third-party action in the main suit without first paying plaintiff's claim if the plaintiff could have maintained the same action directly against the third party. *Security State Bank v. Commercial Standard Title Ins. Co.*, 605 S.W.2d 673, 674 (Tex.Civ.App.–Dallas 1980, writ dism'd w.o.j.). The rationale for this general exception to the "payment" rule is that, if the third party is primarily liable and the claimant could have elected to proceed against it rather than against the subrogee, then the subrogee ought to be able to similarly assert the self-same cause of action against the third party in the main case without first having to paying the claim.[14] *Id.* at 675. In our case, Mt. Hawley has appropriately commenced the Third Party Action against Baker, pursuant to its subrogation rights, because CVA could have maintained the same action directly against Baker, the

third party, at a time when CVA was still a viable legal entity. *See id.* Thus, according to *Rushing*, no matter what happened to CVA after April 1999 (*e.g.* liquidation, dissolution or forfeiture), Mt. Hawley is not barred from proceeding with its subrogation suit against Baker, because Mt. Hawley became the real party in interest in April 1999.[15]

Ironically, our conclusion that Mt. Hawley is the real party in interest is the precise conclusion Baker wanted this court to reach. However, Baker believes that conclusion carries some additional baggage: Baker thinks that, because Mt. Hawley is the real party in interest, Mt. Hawley cannot pursue the Third Party Action in the name of CVA. Instead, Baker maintains that Mt. Hawley must maintain the subrogation action in its own name, citing for support a Supreme Court decision, *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 380–81, 70 S.Ct. 207, 94 L.Ed. 171(1949). Baker's mistake here is in citing a federal procedural rule that has no application in a state action governed by its own, independent state rule of procedure.

It is indeed true that, under federal procedural law, "every action must be

---

*how much* it should receive.") (emphasis supplied in the original).

**14.** This rule makes sense in light of § 33.004(a) of the Texas Civil Practice and Remedies Code, which provides that a defendant must join a responsible third party who has not been sued by the claimant prior to the expiration of limitations on the claimant's claim for damages. *Id.* (Added by Acts 1995). Failure to join the third party prior to the expiration of limitations on the claimant's claim for damages will forfeit the defendants right to contribution or indemnity from the third party. *See* Tex.Civ.Prac. & Rem Code, § 33.004(a)–(b). Applied to our case, if Mt. Hawley's right to subrogation did not arise until *after* it fully resolved and made payment in satisfaction of any judgment arising from the State Court Action, then the statute of

limitations on the state court claimant's claim might well have already expired. Thus, under § 33.004 it would be too late for Mt. Hawley to assert a third party claim against Baker. The exception thereby puts the lie to the opprobium that the law is an ass. *See* Charles Dickens, *Oliver Twist* ( "If the law supposes that," said Mr. Bumble, "the law is a ass, a idiot.")

**15.** This conclusion also means that as of April 1999, CVA only retained a nominal interest in the Third Party Action. When CVA filed for bankruptcy in October 1999, CVA's nominal interest in the action became part of the chapter 7 estate. This nominal interest was formally abandoned by the trustee on August 22, 2000. The nominal interest then reverted back to CVA, and remains there today. *See supra* notes 4 and 7.

prosecuted in the name of the real party in interest." *See* FED.R.CIV.PRO. 17(a). The Supreme Court in *United States v. Aetna Casualty & Surety Co.,* applying this rule, held that, if an insurer has paid the entire loss suffered by the insured, then it is the only real party in interest and must sue in its own name. Our case, by contrast, is governed by state law because it involves an insurance contract governed by Texas law, being litigated in Texas state court. *See Matter of Topco, Inc.,* 894 F.2d 727, 738 (5th Cir.1990) (stating that even in bankruptcy proceedings, state law governs contract issues). Wright's *Federal Practice and Procedure* aptly points out that "the question of who is the real party in interest should be distinguished from the question of in whose name an action may be brought. *State law* may provide that a particular plaintiff has a cause of action but that the claim should be prosecuted in the name of another party." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FED.PRACT. & PROC. 2D, § 1544, p. 345 (West 1990) (emphasis added). And Texas has such a law.

■ In Texas (as in federal courts ), "the subrogee *is* the real party in interest." *See Rushing,* 604 S.W.2d at 241 (emphasis added); *see also Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 n. 4 (Tex.1991) ("As a result of the settlement, U.S. Fire has been subrogated to the rights of the English China entities in this cause. Therefore, U.S. Fire is the real party in interest."); *Butler v. Ross,* 836 S.W.2d 833, 834 n. 1 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Williams v. Ad-*

*vanced Technology Center, Inc.,* 537 S.W.2d 531, 531 (Tex.Civ.App.—Eastland 1976, writ refused n.r.e.). However, Texas courts do not require the subrogee insurance company to sue in its own name, even though it is, at law, the real party in interest. *See Prudential Property and Cas. Co. v. Dow Chevrolet–Olds, Inc.,* 10 S.W.3d 97, 99 (Tex.App.—Texarkana 1999, writ dism'd). In *Prudential,* the subrogee insurance company admitted that it was the "only real party in interest." Nevertheless, the court held that the subrogee could continue to pursue the action in the name of the subrogor, observing that

> [i]n a subrogation action, it is well established that there is only one cause of action for the insured's injuries, and that cause of action belongs to the insured. However, simply because the claim belongs to the insured does not mean that the insurer must wait for the insured to assert this claim in order for the insurer to recover. The insurer can assert its subrogation claim independently of the insured, even though that claim is considered derivative of the insured's claim. When an insurer asserts this type of claim without the insured, *the insurance carrier may sue in its own name or in the insured's name.*
>
> The instant suit was originally filed by Prudential in the name of the insured, without disclosing the insurance carrier's involvement in the suit. While this may be misleading, Prudential was clearly within its rights, under the laws of subrogation, to file suit in this manner.

*Id.* at 100 (emphasis added) (citations omitted).[16] The self-same rule applies here:

---

16. A similar principle applies to assignments. *Southern County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 465 (Tex.App.—Corpus Christi 2000, no pet.) ("An assignee may file suit and recover either in his own name or in the name of the assignor. Nevertheless, whatever name he chooses to sue under, when a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment.") (citations omitted).

Mt. Hawley may pursue the Third Party Action against Baker in the name of CVA, its subrogor.

## CONCLUSION

The insurance policy in this case expired prior to the time that CVA filed for bankruptcy and CVA paid all premiums due under the policy period in question (July 1996–July 1997). Thus, there is no reason for this court to conclude that the advent of bankruptcy destroyed or altered the rights of CVA and Mt. Hawley that arose and matured prior to CVA's bankruptcy filing. Furthermore, because Mt. Hawley's subrogation rights were fixed at a time when CVA was a viable legal entity, and because Mt. Hawley is the real party in interest, the subsequent bankruptcy filing and liquidation of CVA has not destroyed Mt. Hawley's subrogation rights. Nor, under Texas law, is Mt. Hawley obligated to pursue its subrogation claim in its own name. The court has already entered orders consistent with this decision.