NO. 07-07-0147-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 30, 2008
______________________________

WOODROW NELSON & SON, INC., APPELLANT

V.

ED WRIGHT CATTLE COMPANY, INC., DARWIN MANNING
AND DARWIN MANNING CATTLE COMPANY, INC., APPELLEES
_________________________________

FROM THE 242ND DISTRICT COURT OF CASTRO COUNTY;

NO. B8355-0502; HONORABLE ED SELF, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Appellant, Woodrow Nelson & Son, Inc. (Nelson), appeals from the trial courtâs
granting of a summary judgment in favor of appellees, Ed Wright Cattle Co., Inc. (Wright)
and Darwin Manning and Darwin Manning Cattle Co., Inc. (Manning). We will affirm the
trial courtâs judgment.
Â 
Â 
Factual and Procedural Background
Â Â Â Â Â Â Â Â Â Â In January 2005, Nelson sold 280 head of cattle in two lots. The cattle in each lot
were sold to Rob Bradley. The first lot was delivered on January 14, 2005, at which time
Bradley delivered his check to Nelson in the amount of $114,421.30. The second lot of
cattle was delivered to Bradley by Nelson on January 22, 2005, and again, Bradley
delivered his check to Nelson in the amount of $115,464.43. At no time did Bradley
represent to Nelson that he, Bradley, was acting on behalf of anyone other than himself. 
There is no dispute that the amount of either check is incorrect. Bradley subsequently
passed away on January 23, 2005, before either check was deposited in the Nelsonâs bank
account. When the checks were presented for payment both were refused as there were
insufficient funds in Bradleyâs account to pay the checks. Ultimately, Nelson filed a suit to
collect the amount of the checks. It is undisputed that Bradley or his estate was paid for
the cattle. 
Â Â Â Â Â Â Â Â Â Â Originally Nelson sued the estate of Robert Bradley and Ed Wright, individually, but
subsequently took a non-suit against both. Nelson claims that the defendants are
obligated to pay for the amount of the checks Bradley issued it under the theory that
Bradley was the agent of Wright and Manning. After an adequate time for discovery,
Wright and Manning filed both traditional and no evidence motions for summary judgment. 
See Tex. R. Civ. P. 166a(c) and 166a(i). At or near the same time, Nelson filed its motion
for traditional summary judgment. 
Â Â Â Â Â Â Â Â Â Â On August 11, 2006, the trial court granted the motions for summary judgment filed
by Wright and Manning, both the traditional and no evidence motions. The order of the trial
court recites that, because of its ruling on Wright and Manningâs motions for summary
judgment, it did not reach the merits of Nelsonâs motion for summary judgment. It is from
this ruling that Nelson appeals. By one issue, Nelson claims that the trial court erred in
determining there was no agency relationship existing between Bradley and Wright and
Bradley and Manning because the summary judgment evidence raised a fact issue
regarding agency.
Standard of Review
Â Â Â Â Â Â Â Â Â Â In reviewing a trial courtâs decision to grant a traditional motion for summary
judgment we review the judgment of the trial court de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). In conducting this review we will take as true
all evidence favorable to the nonmovant, and indulge every reasonable inference and
resolve any doubts in the nonmovantâs favor. Id. To sustain the granting of a traditional
summary judgment motion, we must find that the movant has met its burden of establishing
that there is no genuine issue of material fact and that it is entitled to judgment as a matter
of law. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 
Â Â Â Â Â Â Â Â Â Â Â In a no evidence motion for summary judgment, the movant must set forth the
elements of the adverse partyâs claim for which it is alleged there is no evidence. See Tex.
R. Civ. P. 166a(i), Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005). The
burden then shifts to nonmovant to show that there is more than a scintilla of probative
evidence to raise a genuine issue of material fact on the disputed issue. Forbes Inc. v.
Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of
evidence exists when the evidence is so weak as to create only a surmise or suspicion of
the fact to be proved. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). 
To raise a genuine issue of material fact, however, the evidence must exceed mere
suspicion, for evidence so slight is to do nothing more than make any inference a guess,
and as such, equate to no evidence. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601
(Tex. 2004). Conversely, more than a scintilla of evidence exists if it would allow
reasonable and fair-minded people to differ in their conclusions. King Ranch, 118 S.W.3d
at 751. Our examination of the record is performed in the light most favorable to the
nonmovant. Forbes, 124 S.W.3d at 172. 
Analysis
Â Â Â Â Â Â Â Â Â Â All parties to this appeal agree that the decisive issue raised in the no evidence
motions for summary judgment is the question of agency. Was Bradley acting as an agent
for either Wright or Manning? If the latter, then the next question is was Manning acting
as an agent for Wright? Regarding agency, Texas law does not presume agency, and the
party alleging an agency relationship has the burden of proving the issue. IRA Resources,
Inc. v. Griego, 221 S.W.3d 592, 597 (Tex. 2007). Agency is a consensual relationship and
there must be a meeting of the minds to establish this relationship, although consent may
be implied by words or conduct of the parties. See Carr v. Hunt, 651 S.W.2d 875, 879
(Tex.Civ.App.âDallas 1983, writ refâd n.r.e.). It is the right of the principal to control the
details of accomplishing the assigned task that primarily distinguishes the agent from the
independent contractor. First Natâl Acceptance Co. v. Bishop, 187 S.W.3d 710, 714
(Tex.App.âCorpus Christi 2006, no pet.). It is this right of control that is the supreme test
for the existence of an agency relationship. Id. Texas has adopted Section 14 K of the
Restatement (Second) of Agency (1957). Rufenacht v. Iowa Beef Processors, Inc., 492
F. Supp. 877, 881 (N. D. Tex. 1980) (citing American Employers Ins. Co. v. Kilgore, 412
S.W.2d 67,69 (Tex.Civ.App.âAmarillo 1967, writ refâd n.r.e.)). The comments portion of
Section 14 K gives guidance about how to view the factors surrounding an allegation that
one party has acted as an agent for another. The factors to be analyzed are that the party:
1) is to receive a fixed price for the property, irrespective of the price paid by him; 2) acts
in his own name and receives the title to the property which he thereafter is to transfer, and
3) has an independent business in buying and selling similar property. Id. 
Â Â Â Â Â Â Â Â Â Â According to Nelson, the following evidence was introduced as summary judgment 
evidence and raised more than a scintilla of evidence regarding the existence of an agency
relationship as to both Wright and Manning vis-a-vis Bradley.


 
Over the years, Bradley sold in excess of $30 million in cattle
for Wright.
Eighty-five percent of Bradleyâs business was with Wright Co. 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Bradley was paid by commission.
Wright gave permission to brokers to purchase cattle on a deal
by deal basis.
Wright described the type of cattle desired by breed and
weight characteristics. 
At the time of purchase, Wright took actual possession of the
cattle. (The cattle were loaded on to trucks arranged by
Wright.)
Â 
A review of the total record reveals that each of the factors that Nelson allegedly raises the
issue of agency raises only a surmise or suspicion of agency and, even when viewed in the
light most favorable to the nonmovant, is just as easily explained in the terms of an
independent contractor. There is no evidence in this record that would indicate that any
of these actions would not be taken by Bradley or any broker acting as an independent
contractor. By way of example, Ed Wrightâs affidavit points out that the breed and weight
characteristics are given to him by his customers and are not an attempt by his company
to do anything except meet the requirements of his customers. Likewise, the act of
arranging for shipment of the cattle at time of delivery is reflective of the fact that Wright
does not hold cattle because his business is to fill orders for feedlots and other finishers. 
Therefore, he ships the cattle immediately. Nelson opines that this means Bradley never
takes possession of the cattle, which according to Nelsonâs analysis, is indicative of the fact
that he was operating as an agent. However, the analysis offered by Nelson is equally
operative in the situation of an independent contractor as it is with an agent. The summary
judgment evidence indicated that Wright already had the cattle sold to a feedyard. Further,
Nelson knew that Bradley was acting as a broker only and would resell the cattle and that
such an arrangement was standard in the industry. Nelson alleges that Bradley was paid
on commission and that is definitely indicative of an agency type of relationship. The
summary judgment evidence indicates that Manning and Bradley may have, at times, split
commissions; however, on the occasion in question, there was no proof of splitting of
commissions. Indeed, the evidence indicated that a check for a specific purchase price
for each lot of cattle was issued by Wright to Bradley, or his estate, as opposed to a
commission check. In the final analysis, indulging all inferences in favor of Nelson still
results in summary judgment evidence that is no more indicative of an agency relationship
than that of an independent contractor relationship. Accordingly, we can say that this
evidence does no more than raise a surmise or suspicion. A surmise or suspicion equates
to no evidence. Ford Motor Co., 135 S.W.3d at 601. Because Nelson has failed to
produce any evidence on the essential issue of agency between Bradley and Wright or
Bradley and Manning, the trial court was correct in granting Wright and Manningâs no
evidence motions for summary judgment. Forbes Inc., 124 S.W.3d at 172. 
Â Â Â Â Â Â Â Â Â Â When a nonmovant fails to produce more than a scintilla of evidence under the
burden of a no evidence motion for summary judgment there is no need to further analyze
the sufficiency of movantâs proof on the traditional motion for summary judgment. Ford
Motor Co., 135 S.W.3d at 600. Because of our holding above we need not address the
additional issue of whether Manning was an agent of Wright.
Conclusion
Â Â Â Â Â Â Â Â Â Â Having overruled Nelsonâs issue regarding whether an agency relationship existed
between the parties, we affirm the trial courtâs judgment. 




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Mackey K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice




in-top:0in;margin-right:.75in;
margin-bottom:0in;margin-left:58.5pt;margin-bottom:.0001pt;text-align:center;
line-height:normal;tab-stops:4.5in'>   Appellant


v.

Â 

LESTER PAYNE, INDIVIDUALLY AND DBA PONDEROSA PROPERTIES; KCCC PROPERTIES, INC. DBA PONDEROSA PROPERTIES; CLAY D. ÂBEAUÂ BOMAR,
INDIVIDUALLY AND DBA SADDLE UP MANAGEMENT COMPANY; SHAWNDA MASEY, INDIVIDUALLY
AND DBA SADDLE UP MANAGEMENT COMPANY; RONALD WHISENANT, INDIVIDUALLY AND DBA
RONÂS MAINT; JARRED
PIERSON AND DIANA VENICE PIERSON,Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellees

___________________________

Â 

FROM THE 237TH DISTRICT COURT
OF LUBBOCK COUNTY;

Â 

NO. 2007-541,744; HONORABLE
PAULA LANEHART, PRESIDING

__________________________

Â 

Memorandum Opinion

__________________________

Â 

Before QUINN, C.J.,
and HANCOCK and PIRTLE, J.J.

Â Â Â Â Â Â Â Â Â Â Â  This
appeal involves the dismissal of the subrogation claims of the City of
LubbockÂs workersÂ compensation carrier against the owner and manager of an
apartment complex.Â  Jarred Pierson, a Lubbock police officer,
was injured on the job while chasing a suspect at the apartment complex, when he fell over a cable that had
been placed there by the Ponderosa Apartments (Ponderosa) to prevent cars from
entering into a particular area. Pierson filed suit against Ponderosa to
recover for his injuries. At the same time, he received workersÂ compensation
benefits from the City of Lubbock (the City), which intervened in his lawsuit against Ponderosa. One day before trial, Pierson
non-suited his lawsuit with prejudice. Ponderosa then also obtained a dismissal with
prejudice of the CityÂs claims.Â  However, the City contends it
is entitled to continue to pursue the lawsuit against Ponderosa to the extent
that it has made compensation benefits to Pierson. We agree and reverse the
order of dismissal. 

Â Â Â Â Â Â Â Â Â Â Â  If an
injured employee claims a workersÂ compensation benefit, the insuranceÂ  carrier is subrogated to the rights of the injured employee
and may enforce the liability of a third party in the name of the injured
employee.Â  Tex. Lab. Code Ann. Â§417.001(b) (Vernon 2005).
The purpose of the statute is to prevent over-compensation to the employee and
to reduce the financial burden of insurance to the employer and the public. Erivas
v. State Farm Mut. Auto. Ins. Co., 141 S.W.3d 671, 676 (Tex. App.ÂEl Paso 2004, no pet.); Granite
State Ins. Co. v. Firebaugh, 558 S.W.2d 550, 551 (Tex. Civ. App.ÂEastland 1977, writ refÂd n.r.e.), (citing
Capitol Aggregates, Inc. v. Great Am.
Ins. Co., 408 S.W.2d 922 (Tex. 1966)).Â 
It has been held that there is only one cause of action for the
insuredÂs injuries that belongs to the insured. Guillot v. Hix, 838 S.W.2d 230, 232 (Tex. 1992); Prudential
Prop. & Cas. Co. v. Dow
Chevrolet-Olds., Inc., 10
S.W.3d 97, 100 (Tex. App.ÂTexarkana
1999, pet. dismÂd by agr.). However, even though the subrogeeÂs claim is derivative, the
insurer may assert it independently. Franks v. Sematech, Inc., 936 S.W.2d 959, 960 (Tex. 1997)
(stating that a carrier asserts a claim belonging to the employee whether it
sues in its own name or the employeeÂs name and whether it seeks only the
amount of benefits paid to the employee or more).Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  There is a split of authority as to
the fate of the insurance carrier when the lawsuit of the employee against a
third party is dismissed.Â  Some courts
hold that when an employeeÂs cause of action is defeated, that of the carrier
is defeated as well.Â  See
Smith v. Babcock & Wilcox Constr. Co., 915 S.W.2d 22, 27 (Tex. App.ÂAustin 1994), revÂd, 913 S.W.2d 467 (Tex. 1995) (dismissing
insurance carrierÂs cause of action when the employeeÂs cause of action was
dismissed for want of prosecution); Phennel v. Roach, 789 S.W.2d 612, 615 (Tex. App.ÂDallas 1990, writ denied) (when the
employeeÂs pleadings were struck as a sanction, the claim of the insurance
carrier was also defeated); Houston v. Twin City Fire Ins. Co., 578 S.W.2d 806, 808 (Tex. Civ. App. ÂHouston [1st Dist.] 1979, writ refÂd
n.r.e.) (failing to comply with the notice requirement
for an employeeÂs claim against the City resulted in the insurerÂs subrogation
suit suffering the same fate). 

Â Â Â Â Â Â Â Â Â Â Â  Other authority holds that once
compensation benefits have been paid, the right of the insurance carrier
overrides that of the employee. Hartford Cas. Ins. Co. v. Albertsons Grocery Stores, 931 S.W.2d 729, 734 (Tex. App.ÂFort Worth 1996, no writ); Tex.
Council Risk Mgmt. Fund v. Caswell, No. 03-06-00480-CV, 2007 Tex. App. Lexis 3858, at *5 (Tex. App.ÂAustin May 18, 2007, no pet.) (mem.
op.); see
also Herrera
v. Wembley Inv. Co., 12 S.W.3d 83, 89 (Tex. App.ÂDallas 1998), revÂd on
other grounds, 11 S.W.3d 924 (Tex. 1999) (stating that dismissal of an
insuredÂs part of a cause of action does not necessarily dismiss the insurerÂs
part); In re Romero,
956 S.W.2d 659, 662
(Tex. App.ÂSan Antonio 1997,
orig. proceeding) (dismissing the insuredÂs claim did not dismiss the insurerÂs
claim); MacArangal
v. Andrews, 838 S.W.2d
632, 635-36 (Tex. App.ÂDallas 1992, no writ) (dismissing case for want of prosecution did not
affect the intervening insurer because the dismissal did not specifically
mention it).Â  In its opposition to these
authorities, Ponderosa relies on the rule that the insurance carrier is subject
to the same defenses which may defeat a cause of action as the injured party.Â  See Guillot v. Hix, 838 S.W.2d at 232.Â 
However, PiersonÂs dismissal did not involve any defense asserted by
Ponderosa but was a voluntary action on PiersonÂs part.Â  

Â In agreeing with those
courtsÂ holdings that a dismissal of the employeeÂs claims does not necessarily
require dismissal of the carrierÂs claims, we note the purpose of the statute
as already discussed and the rule that a party may not dismiss his lawsuit to
the prejudice of another party.Â  Tex. R. Civ. P. 163; Employers Cas. Co. v. Henager, 852
S.W.2d 655, 660 (Tex. App.ÂDallas
1993, writ denied).Â  We are also mindful
of the right of the insurer to bring a lawsuit in its own name.Â  See Tex. Mut. Ins. Co. v.
Ledbetter, 251 S.W.3d 31,
36 (Tex. 2008) (stating that when a subrogeeÂs interest has been adequately
represented and then suddenly abandoned by someone else, it can intervene even
after judgment or on appeal, so long as there is neither unnecessary delay nor
prejudice to the existing parties), and the prior recognition by this court
that the injured partyÂs cause of action is subject to the carrierÂs right of
reimbursement. Employers Cas. Co.
v. Dyess,
957 S.W.2d 884, 886
(Tex. App.ÂAmarillo 1997, pet.
denied); see also Prudential Prop. & Cas.
Co., v. Dow Chevrolet-Olds., Inc., 10 S.W.3d at 104 (noting that the trial court could
dismiss the claims that the insurer, Prudential, asserted on behalf of the
insureds, for which Prudential was not entitled to recover as a subrogee, but
the trial court erred in dismissing PrudentialÂs subrogation claims for the
failure of the insureds to appear at their depositions).[1] 

But most importantly, to hold otherwise would be to ignore
several long established rules of subrogation.Â 
These rules become pertinent when, as here, the subrogee (i.e. the City of Lubbock) made payment, and the tortfeasor
(i.e. Ponderosa) knew of the subrogeeÂs
claim before compromising the claim with the subrogor (i.e. Pierson).Â  

Payment from a subrogee effectuates a transfer of interest in
the cause of action to the subrogee. See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.
2007) (stating that under either type of subrogation (contractual or equitable)
the insurer stands in the shoes of the insured obtaining only those rights held
by the insured against a third party, subject to any defenses held by the third
party against the insured); see also International Ins. Co. v. Medical-Professional
Bldg., 405 S.W.2d 867, 869 (Tex. Civ. App.ÂCorpus Christi 1966, writ refÂd n.r.e.) (involving
an insurance relationship and stating that the fact of payment of the loss operates as an
equitable transfer of the claim).Â  When
that occurs, the subrogee assumes the status as the Âreal party in interestÂ while the subrogorÂs interest becomes nominal. In re CVA Gen. Contrs., Inc., 267 B.R.
773, 781-82 (Bankr. W.D. Tex. 2001).Â 
Next, if (1) the subrogor enters into a settlement with and gives a
release to the wrongdoer after such payment, (2)
while the tortfeasor knows of the subrogeeÂs rights of subrogation, and (3) the
subrogee is not party to the settlement, then settlement does not bar the
subrogee from enforcing its subrogation right. International
Ins. Co. v. Medical-Professional Bldg., 405 S.W.2d at 869.Â  In other words, once the subrogeeÂs rights become
fixed via payment, a change in the subrogorÂs ability to pursue a cause of
action does not affect the subrogeeÂs ability.Â 
Rushing v. International Aviation Underwriters Inc., 604 S.W.2d 239,
241-42 (Tex. Civ. App.ÂDallas 1980, writ refÂd n.r.e.); In re CVA Gen. Contrs., Inc., 267 B.R. at 782.Â  So, it does not matter that Pierson may have
compromised whatever remaining claim he had against Ponderosa and dismissed his
portion of the suit with prejudice. The City had compensated Pierson to some
extent before then and, therefore, owned at least a part of the cause of action.Â  Pierson also knew of the CityÂs status as a
subrogee before the non-suit.Â  Consequently,
the actions of Pierson, whether or not induced by Ponderosa, did not, and do
not, bar the City from continuing its recovery efforts against the purported
tortfeasor.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, we reverse the trial
courtÂs order dismissing the CityÂs claims, and remand for further proceedings.

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Brian
Quinn 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Chief
JusticeÂ Â Â  

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â  











[1]Ponderosa
argues that the City did not preserve error by failing to present any
post-judgment motion seeking to modify the dismissal of PiersonÂs claims.
However, that argument is met by the analysis that Pierson dismissed only those
claims for which the insurance carrier was not entitled to recover as
subrogee.Â Â Â Â