EUGENE A. WRIGHT, Circuit Judge:
 

 This case presents us with a novel question involving principles of bankruptcy, labor, and corporate law. The question is whether a corporation’s liability for NLRB damages survives Chapter 7 bankruptcy proceedings and attaches to its alter ego formed after bankruptcy. We conclude that it does and enforce the order of the NLRB.
 

 BACKGROUND
 

 The Mylans have conducted a roofing business through several different corporations for ten years. In 1977, they were doing business through Better Building Supply Corp. The NLRB found that BBSC engaged in unfair labor practices and assessed backpay damages.
 

 The Mylans ceased doing business through BBSC and formed Evergreen Roofing, Inc. to conduct essentially the same business. This company, ERI, did not recognize the union or the collective bargaining agreement. The Board found BBSC and ERI to be alter egos because the Mylans controlled, financed, and managed both corporations, which conducted similar business, using the same equipment, employing many of the same workers, and operating in the same location. The Board ordered ERI to pay damages under the NLRA.
 

 The Mylans quit doing business through ERI in 1982 and formed a new entity, Bes-co Roofing and Coating, Inc. and Besco Coating, a proprietorship. In 1983, the My-lans and their corporations filed voluntary petitions in bankruptcy under Chapter 7. One year later the bankruptcy court discharged all “dischargeable debts” of the Mylans.
 

 The Mylans quit doing business through BRCI and BC in 1984, and created BRI, a corporation selling roofing contracts. The Board found that BRI was the latest alter ego of BBSC based on common control and management of the Mylans and the similarity of the work performed. It rejected the Mylans’ argument that the backpay debt had been discharged by the bankruptcy proceedings, finding that Chapter 7 cannot discharge corporate debt. The Board ordered BRI to satisfy the debt. The NLRB petitions for enforcement of its order. ANALYSIS
 

 Appellate courts “enforce an NLRB order if it correctly applies the law
 
 and
 
 its factual findings are supported by substantial evidence in the record as a whole.”
 
 Local 512, Warehouse and Office Workers’ v. NLRB,
 
 795 F.2d 705, 710 (9th Cir. 1986) (emphasis in original). Courts generally defer to the Board’s construction of law.
 
 Id.
 
 Because this case turns on an interpretation of the Bankruptcy Code, rather than the NLRA, we do not accord the Board such deference.
 

 A corporation that succeeds another that is liable for damages under the NLRA inherits that liability if the corporations are alter egos.
 
 Tanaka Construction v. NLRB,
 
 675 F.2d 1029 (9th Cir.1982) The Mylans do not challenge this principle or the Board’s conclusion that BRI is the alter ego of their earlier businesses. Rather, they contend that the liability for the back-pay judgment was discharged in bankruptcy. Because the debt did not survive the bankruptcy proceedings, they argue, there is no debt for which BRI can be liable.
 

 Section 727 explicitly provides: “The court shall grant the debtor a discharge unless ... the debtor is not an individual.” 11 U.S.C. § 727(a)(1). Partnerships and corporations may not discharge their debts in a liquidation proceeding under Chapter 7 of the Code.
 
 See Collier on Bankruptcy
 
 at 727-7 — 727-9
 
 *379
 
 (15th ed.) (“Under the Code, a corporation or partnership that is in a chapter 7 proceeding is liquidated only and never receives a discharge.”
 
 Collier
 
 at 727-8.) The NLRA damage judgment survived the bankruptcy proceedings as a corporate debt.
 

 This result is not affected by the government’s failure to object to the discharge. Although section 727 requires generally that creditors file an objection to prevent debts from being discharged, “if the debtor is not an individual, a discharge will be denied even in the absence of any objection by a party.”
 
 Collier, id.
 
 The Board’s failure to object did not waive the prohibition of section 727(a)(1) against discharging corporate debt.
 

 The Mylans contend that to conclude that corporate debt survives Chapter 7 proceedings is contrary to the policy underlying Section 727. Specifically, they argue that Section 727 excludes corporate debt from discharge only because after Chapter 7 proceedings, a corporation has no assets and does not exist. Corporate debt cannot survive Chapter 7 proceedings because without a corporation, the debt cannot exist.
 

 Contrary to this assertion, Chapter 7 proceedings cannot dissolve a corporation. If the Mylans sought to dissolve their corporations, they should have used state procedures.
 
 See Collier
 
 at 727-8. (“[T]he Code does not provide for dissolution of corporation's.”) Their claim that section 727 excludes corporations from discharge because Chapter 7 proceedings effect dissolution is not supported by the terms of the Code.
 

 Legislative history indicates that section 727(a)(1) was designed to prohibit the kind of business activity undertaken here. The primary concern underlying this section was to prevent businesses from evading liability by liquidating debtor corporations and resuming business free of debt.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977) reprinted in 1978 U.S.Code Cong, and Admin.News, pp. 5787, 6340, and S.Rep. No. 989, 95th Cong.2nd Sess. 98 (1978) reprinted in 1978 U.S.Code Cong, and Admin.News, p. 5884. (Section 727(a)(1) was adopted to “avoid trafficking in corporate shells and in bankrupt partnerships.”) The drafters chose not to make corporate debt dischargeable so that corporations continuing to operate could not avoid previously incurred debt.
 

 In adopting section 727(a)(1), Congress intended that corporate debt would survive Chapter 7 proceedings and be charged against the corporation when it resumed operations.
 
 Cf Collier
 
 at 727-8. If the Mylans conducted their business through BBSC or ERI, those corporations would be liable for the NLRB judgment. Because the Board found BRI to be BBSC’s ERI alter ego, BRI is in the position that BBSC and ERI would be if the Mylans did business through them. BRI, therefore, is liable for the NLRB judgment against BBSC and ERI.
 

 The Mylans argue also that because the Board based its finding that the corporations were alter egos because of their extensive personal involvement, it should not have found the damage judgment to be a corporate debt. Rather, the Board should have found the debt to be personal, subject to discharge under Chapter 7.
 

 The determination that two corporations are alter egos is based on the following factors:
 

 (1) centralized control of labor relations,
 

 (2) common management, (3) interrelation of operations, and (4) common ownership and financial control.
 

 Tanaka,
 
 675 F.2d at 1033. As a matter of law, a finding of corporate alter ego requires the Board and reviewing courts to consider the similarities of the businesses and whether the same people control Labor relations for both corporations, manage both corporations, and own and control both corporations.
 

 The finding that the Mylans were involved in all three corporations is not relevant to imposing corporate liability on the Mylans in their personal capacity. Under applicable Washington law, corporate liability is treated as the personal liability of the shareholders when “the liability-causing activity did not occur only for the
 
 *380
 
 benefit of the corporation ... or [when] the liable corporation has been ‘gutted’ and left without funds by those controlling it in order to avoid actual or potential liability.”
 
 Morgan v. Burks,
 
 93 Wash.2d 580, 611 P.2d 751, 755 (1980) (en banc). The Mylans’ extensive personal involvement in their corporations does not support a finding that either condition existed.
 

 The NLRB found properly that BBSC is liable for the judgment against its alter ego corporations and that the judgment was not discharged in bankruptcy. We order the NLRB order enforced.