In the Matter of LIBERTY TRUST COMPANY.

LIBERTY TRUST COMPANY EMPLOYEES PROFIT SHARING TRUST

v.

Kenneth HOLT, Trustee and Federal Deposit Insurance Corporation as Managing Agent for the FSLIC Resolution Fund.

No. MO–90–CA–079.

United States District Court, W.D. Texas, Midland–Odessa Division.

May 3, 1991.

Robert M. Janes, Albuquerque, N.M., for Liberty Trust Co. Employees Profit Sharing Trust.

Liberty Trust Company Employees Profit Sharing Trust, William Michael Furman, pro se.

Randall L. Rouse, Shafer, Davis, McCollum et al., Odessa, Tex., for Kenneth Holt, Donald S. Leslie and Randolph N. Osherow.

Robert G. Richardson, Hutcheson & Grundy, Dallas, Tex., for F.D.I.C.

## MEMORANDUM OPINION AND ORDER

BUNTON, Chief Judge.

Before this Court is the Appeal of Liberty Trust Company Employees Profit Sharing Trust of the decision of the United States Bankruptcy Court for this District and Division as set forth in the November 1, 1989 Order in Reference to the Chapter 7 Trustee's Motion to Determine Corporate Status of Liberty Trust Company, and in the March 5, 1990 Order in Reference to the Motion for Reconsideration of Order Determining Corporate Status of Liberty Trust Company. The Briefs of the Appellant and the Appellee, Kenneth Holt, are also before the Court. The Court finds it has jurisdiction to consider and determine the issues raised on appeal, and here does so. But first, the Court must decide certain preliminary matters.

## PRELIMINARY MATTERS

*Appellee's Motion to Strike*

■ Liberty Trust Company Employees Profit Sharing Trust filed its Notice of Appeal in this case on March 13, 1990, and its Designation of Record and Statement of

Issues on March 22, 1990. Both these documents were filed and signed by Robert M. Janes ("Janes") as attorney for the Appellant.

Then, on June 7, 1990, William Michael Furman ("Furman") filed a document styled Appellant's Designation of Wm. Michael Furman, *Pro Se*, to Handle Appeal and Answers Appellee's Designation of Additional Contents of Record on Appeal and Confirms Original Statement of Issues to be Presented on Appeal. On the same date, Furman also filed an Entry of Appearance With Substitution of Wm. Michael Furman, *Pro Se* for Robert M. Janes. The Court notes Furman initially and erroneously filed both these documents in the Bankruptcy Court. The Bankruptcy Clerk found the error and advised Furman, who then filed here.

Janes seemingly was not licensed to practice in the District Court for the Western District of Texas. At some point he sought leave to appear pro hac vice, though no such motion was included in the record on appeal. The Court granted Janes leave to appear on September 5, 1990.

Meanwhile, Appellant the Federal Deposit Insurance Corporation ("FDIC") on May 11, 1990 filed a Motion to Strike Furman's entry of appearance and substitution for Janes, as well as Appellant's designation of Furman as counsel. Appellant argued, according to the authority of *Southwest Express Co., Inc. v. Interstate Commerce Commission*,[1] that Furman could not appear *pro se* for the Trust.

*Southwest Express* held that Title 28, United States Code, section 1654, which authorizes a person to appear on his own behalf in a Federal court, does not permit an individual who is not a lawyer to appear *pro se* for a corporation. A corporation or partnership must have a lawyer represent it because such an entity cannot appear personally on its own behalf.[2]

---

1. 670 F.2d 53 (5th Cir.1982).

2. *Southwest Express*, 670 F.2d at 55. *See also*, *C.E. Pope Equity Trust v. United States*, 818 F.2d

696 (9th Cir.1987) (finding the right to *pro se* representation is personal, and thus rejecting a non-lawyer trustee's argument that he could appear on behalf of the trust).

On May 21, 1990 Furman filed a Response to the FDIC's Motion to Strike. Furman argued it would be inequitable for the Court to strike his entry of appearance for the Trust because the Trust had no money to pay a lawyer. Further, as Trustee of the ERISA Profit Sharing Plan, Furman had a legal duty to try and preserve the Trust's claims. Further, the Appellant's law firm, which was involved in taking away the Trust's assets, also allegedly represented the Trust at some point. Under such circumstances, Furman argued, it would be particularly unfair to require the Trust's filings be struck simply because Furman was not a lawyer.

With the Motion to Strike and the Response pending, Appellant filed its Brief on May 9, 1990, signed by Furman. Appellee Holt filed his Brief on May 23, 1990, and the FDIC filed a Response Brief on May 29, 1990. Thereafter, on June 11, 1990, Appellant filed a Reply to the FDIC's Response Brief. That Reply was filed and signed by Janes as counsel for the Appellant.

The Court agrees with Appellee FDIC's contention that Furman's *"pro se"* representation of the Trust is improper under the authorities cited. At the same time, to deny the Trust all representation precludes its claims being heard in any form and would require dismissal of the appeal. While such dismissal legally would be without prejudice, the practical effect for a no-asset entity could be tantamount to dismissal with prejudice.

The Court finds significant that Janes reappeared in a Reply for the Appellant, especially in view of the Court's decision to admit Janes *pro hac vice.* The Court notes that Janes filed the Notice of Appeal as well as the designation of issues on appeal. Janes was familiar with the case from representing the Trust in the proceedings appealed from, and evidently was responsible for identifying the issues. Those central issues are the same issues urged by Furman in his Brief, and in part re-urged by Janes in his Reply to the FDIC's brief.

Janes did enter an appearance for the Appellant, though apparently subject to the Court's granting his *pro hac vice* motion. The record contains, and the Court found no indication Janes was not qualified to practice here, and no indication Appellee ever opposed his appearance. As Appellee pointed out, Janes and the Trust never filed the proper motion to have Janes withdrawn as counsel of record for the Appellant. Thus, Furman could not legally have been "substituted" for Janes. Janes never asked to withdraw, and in fact filed a subsequent pleading after Furman's putative substitution. Thus, and unlike the cases cited by the Appellee, the Court here does not face the difficult problem of a corporation or similar entity represented by a layperson.

In consideration of the foregoing, the Court believes Appellee's Motion to Strike Furman's entry of appearance and substitution as counsel should be, and is hereby denied. The Court finds the Motion moot because Furman's notice of substitution and entry of appearance were ineffective.

■ Of course, it also was technically improper for Furman to sign and file the Appellant's Brief. However, Appellee never filed a Motion to strike the Brief itself.[3] Janes, who at all times remained counsel of record for Appellant and who filed the aforementioned Reply, never objected to the form or content of the Brief as signed and filed by Furman. The Court believes Janes, as counsel for Appellant, was ultimately responsible for this Brief. The Court finds it would be grossly unfair at this juncture to dismiss the lawsuit and require the Appellant to replead. The Court will consider the Appellant's Brief as if it had been filed by Appellant's counsel.

*Motion to Strike Appellee's Additional Items*

■ Appellant filed an Objection to Appellee's adding to the record certain Objec-

---

**3.** Appellee's Motion to Strike Furman's entry of appearance asked the Court to strike the Trust's filings. However, the Appellant's Brief was not filed at the time of the Motion to Strike. No motion to strike the brief itself was filed in the case.

tions to Rejection of Executory Contracts and Proposed Abandonment of Property filed by First Savings and Loan of Louisiana FSA on July 16, 1989. Appellant objected that the items are no longer germane to the case. Appellee replied Bankruptcy Rule 8006 allowed Appellee to timely designate the additional items as a matter of right.

The Court finds Appellee should be permitted to file the designation of additional items as a matter of right. Appellant's Objection is hereby denied.

*Violation of Title 29, United States Code Sections 1106 & 1131*

■ Appellant's Response to Appellee's Motion to Strike contends the FDIC is not a proper party to this appeal because the FDIC stands in a fiduciary capacity relative to the Appellant. Appellant contends the FDIC is lead lender in the loan participation agreement in which Appellant owns an interest, and also is receiver of an entity in which Appellant owns all the stock. This status makes the Appellee, guilty of engaging in a prohibited transaction within the meaning of ERISA by "maintaining" this appeal.[4] Appellant argues Appellee also should be subject to criminal penalties for maintaining this appeal. Appellant further argues Appellee is violating Congressional intent and breaching duties to Appellant. Appellant asks the Court to strike all of the Appellee's filings and order Appellee to show cause why their action in maintaining this appeal is not in violation of Title 29, United States Code, Sections 1106 and 1131.

Appellee denies the FDIC occupies any fiduciary capacity relative to the Appellant. In any event, Appellee contends the issues raised by Appellant are not properly before the Court on appeal because the record on appeal contains no evidence regarding such issues. Appellee argues such issues, if they have any merit, should be pursued in a different action if at all.

The Court finds Appellant's arguments improper in the context of this appeal.

Those arguments were not part of the Bankruptcy Court actions of which Appellant here complains. Nor were those issues raised in the Appellant's designation of issues on appeal or in the Appellant's Brief. The standing of the FDIC in this matter perhaps was an issue properly raised in the Bankruptcy Court. It is not an issue on appeal. Appellant's requested relief is denied.

## ISSUES ON APPEAL

*Statement of the Issues*

The parties to this appeal agree on the nature of the issues this Court must decide. The pivotal issue is whether a Chapter 7 corporate debtor has an existence or life outside of the bankruptcy estate.[5] If it does, may it then assert rights to causes of action abandoned by the Chapter 7 Trustee, or to any assets abandoned by the Chapter 7 Trustee?

*Background*

The material facts in this case are not disputed. Liberty Trust Company ("Debtor"), a Texas corporation, filed its voluntary petition in bankruptcy on Christmas Eve, 1986, pursuant to Title 11, United States Code, Section 1101 et seq. The case was converted to a Chapter 7 case, and a Trustee appointed, in March of 1989.

Liberty Trust held legal title to certain notes and properties for and on behalf of certain trusts and note participants. The Chapter 7 Trustee found the estate did not own the beneficial or equitable interest in such properties or participations pursuant to Title 11, United States Code, Section 541(d). The Chapter 7 Trustee on or about June 22, 1989, filed a Notice of Rejection of Executory Contracts and Proposed Abandonment of Property ("Notice"). The Notice communicated the Trustee's intent to reject certain property rights and abandon certain causes of action.

An objection to the Trustee's proposed rejection and abandonment was filed. The Bankruptcy Court held a hearing on the

---

**4.** Title 29, United States Code, Section 1106(b)(1)–(3).

**5.** An "out-of bankruptcy experience," as one Appellee's counsel aptly stated.

Notice on or about August 9, 1989. The Court allegedly accepted in principle the Chapter 7 Trustee's rejection of executory contracts and abandonment of causes of action, but subject to the later entry of an Order to that effect. The Bankruptcy Court never entered this Order, apparently because Furman, on behalf of the Liberty Trust Company Employees Profit Sharing Trust, began operating Liberty Trust Company outside of the Chapter 7 proceeding to assume the property rights the Trustee intended to reject and manage the causes of action the Trustee intended to abandon.

The Chapter 7 Trustee then filed a Motion to Determine Corporate Status of Liberty Trust Company, asking the Bankruptcy Court to determine whether the Liberty Trust Company now operating outside the Chapter 7 could handle or assert the various rights and causes of action the Trustee had sought to abandon. On or about September 12, 1989 the Bankruptcy Court conducted a hearing on this Motion. The FSLIC as predecessor of the FDIC appeared at the hearing, as did First Savings of Louisiana, FSA, and Liberty Trust Company Employees Profit Sharing Trust. Liberty Trust Company, as an entity operating outside of the Chapter 7 proceeding, did not enter an appearance.

The Bankruptcy Court issued an Order, filed November 1, 1989, in Reference to the Chapter 7 Trustee's Motion to Determine Corporate Status of Liberty Trust Company. In that Order, the Bankruptcy Court found the Debtor to be a "defunct corporation" without an existence to operate outside the scope of the bankruptcy estate, and unable to exercise trustee duties or assert right to causes of action. The Bankruptcy Court further ordered the Debtor to turn over to the Chapter 7 Trustee its corporate charter, franchise, and any other corporate assets in its possession or control.

The Debtor filed a Motion for Reconsideration of this order, which Motion the Bankruptcy Court denied, following a hearing, by Order filed March 5, 1990. From this Order the Debtor appealed. While the debtor technically did not appeal the underlying November 1, 1990 Order, that Order is in the record. Since the Order on the Motion for Reconsideration has no effect apart from the underlying November, 1, 1990 Order, this Court must treat the appeal as having been effectively taken from both Orders.

*Analysis*

■ This Court believes the Bankruptcy Court was correct in concluding that the Debtor in this instance could have no further existence. Title 11, United States Code, Section 727(a) provides that a corporation or partnership is not entitled to discharge under Chapter 7. Only individuals are eligible for discharge.[6] Congress' purpose in denying discharge to corporations and partnerships was to "avoid the trafficking in corporate shells and in bankruptcy partnerships."[7] The consequence of denying discharge to corporations and partnerships in a Chapter 7 proceeding is to render such entities "defunct."[8] The Court assumes that "defunct" depicts a status akin to that of a dissolved corporation or partnership,[9] and so interprets the term in this case.

Appellant urges that the "defunctness" or civil demise of the corporation is a "red herring" because the real issue in this appeal is the disposition of assets of the putative out-of-bankruptcy corporation after such assets have been abandoned by the Chapter 7 Trustee. Appellant believes al-

---

6. See, e.g., *Braden v. Tri–R Builders, Inc.,* 86 B.R. 138, 140 (Bankr.N.D.Ind.1986) (interpreting section 727(a) in light of legislative history and current commentary).

7. *Id.,* quoting H.R.Rep. No. 595, 95th Cong. 1st Sess. 384 (1977).

8. See, e.g., *In the Matter of Federal Insulation Development Corp.,* 14 B.R. 362, 364 (Bankr. S.D.Ohio 1981).

9. The Court's research discloses at least one instance in which "defunct" is used in this manner, to describe the hallowed state to which a corporation passes upon its demise, or after the corporate medicine men withdraw artificial life-sustaining treatment. See *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,* 629 F.2d 1183, 1185 (7th Cir.1980). The parties before this Court propose no alternative definition.

lowing Liberty Trust Corporation to handle abandoned assets would create no disruption for the administration of the estate because such assets have already been abandoned by the estate.

Appellant further contends the "civil death" of the corporation, as referred to by the Appellee, is nothing more than a description of the status of an insolvent corporation. The "death" of a corporation upon insolvency does not imply dissolution, but rather only a shifting of priorities among various corporate obligations.

The Court finds Appellant's arguments in this regard inapposite. First, this appeal involves not just a corporation that was insolvent, but an insolvent corporation liquidated under Chapter 7. The intent of Congress in denying discharge to corporations and partnerships under Chapter 7, while admittedly not crystal clear, has so far been interpreted to preclude the continued existence of such corporations. Thus, the cases have held such corporations to be defunct.[10]

■ Further, Texas law provides for the mandatory dissolution of corporations liquidated by a state court. As appellant points out, corporations are creatures of state law, and the Bankruptcy Court presumably cannot dissolve a corporation by declaring it "defunct." The Bankruptcy Court can, however, liquidate the corporation.[11] If such liquidation were conducted by a state court, Art. 7.09 of the Texas Business Corporation Act would require that court to dissolve the corporation.[12] However, because this liquidation was undertaken by the Bankruptcy Court, Art. 7.09 does not afford a vehicle for formal dissolution.

Yet, there is no question but that Art. 7.09 contemplates such a result. For this Court to hold otherwise would run contrary to Art. 7.09.

Although an appropriate state-court proceeding is required to effect the formal dissolution of Liberty Trust Corporation, it appears under Texas law the Corporation is "civilly dead." It is in a state of limbo, the soul having shaken off its mortal coil and begun, but not completed its journey to its ultimate destination. The Court could hardly expect Liberty Trust, in such supernatural state, to assert rights to any causes of action or assets abandoned by the Chapter 7 Trustee. Liberty Trust is *de facto* a dissolved corporation.

The difficulty remains how to dispose of the causes of action and other putative assets now in the Trustee's possession. It appears the Bankruptcy Court, preferring to avoid a metaphysical journey, declined to permit the Trustee to reject or abandon such interests. Consequently the Trustee apparently still has them. Since Liberty Trust is not around to take them, the Bankruptcy Court will now have to decide what to do with them. Accordingly, this matter should be remanded for disposition of the assets sought to be rejected or abandoned by the Chapter 7 Trustee.

In consideration of the foregoing, it is ORDERED, ADJUDGED AND DECREED the decision of the Bankruptcy Court for this District and Division, reflected in the November 1, 1989 Order in Reference to the Chapter 7 Trustee's Motion to Determine Corporate Status of Liberty Trust Company and in the March 5, 1990 Order in Reference to the Motion for Reconsideration of Order Determining Corporate Sta-

---

**10.** *See supra,* notes 6–8, and accompanying text.

**11.** Texas courts distinguish between liquidation, which is the process of winding up a corporation's affairs, and dissolution, which is the formal termination of the corporation's existence. *Burnett v. Chase Oil & Gas, Inc.,* 700 S.W.2d 737, 740 & n. 2 (Tex.App.—Tyler 1985, no writ).

**12.** Texas Bus. Corp. Act Ann., art. 7.09, (Vernon 1980 & Supp.1991) provides, in pertinent part,
 In proceedings to liquidate the assets and business of a corporation, when the costs and expenses of such proceedings and all debts,

obligations, and liabilities of the corporation shall have been paid and discharged, or ... when all the property and assets have been applied so far as they will go to their payment, the court *shall* enter a decree dissolving the corporation, whereupon the existence of the corporation shall cease. (emphasis added)
Art. 7.09 plainly contemplates the dissolution of a corporation following liquidation. Liquidation and dissolution are treated as separate processes because in some instances, the latter may precede the former. *Burnett, supra.*

tus of Liberty Trust Company, is hereby in all matters AFFIRMED.

IT IS FURTHER ORDERED this cause is hereby REMANDED to the United States Bankruptcy Court for this District and Division for further proceedings consistent with this Opinion.