### In re DOW CORNING CORPORATION,
Debtor.

No. 95–20512.

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

June 21, 2001.

George H. Tarpley, Sheinfeld, Maley & Kay, P.C., Dallas, TX, for Dow Corning Corp.

Rozanne M. Giunta, Attorney at Law, Bay City, MI, of counsel.

Kenneth H. Eckstein, Kramer, Levin, Naftalis & Frankel, LLP, New York City, for Official Committee of Tort Claimants.

H. Jeffrey Schwartz, Benesch, Friedlander, Coplan & Aranoff, Cleveland, OH, Richard F. Broude, New York City, William H. Eggers, Corning, NY, for Official Committee of Physician Creditors.

Sheryl L. Toby, Attorney at Law, Detroit, MI, for Official Committee of Unsecured Creditors.

Ogden N. Lewis, Davis Polk & Wardwell, New York City, Ralph R. Mabey, LeBoeuf, Lamb, Greene & Macrae, LLP, Salt Lake City, UT, Robert S. Hertzberg, Attorney at Law, Bloomfield Hills, MI, Glenn E. Siegel, Dechert, Price & Rhoads, Andrew N. Rosenberg, Attorney at Law, New York City, David J. Hutchinson, Attorney at Law, Detroit, MI, Patrick A. Murphy, Murphy, Sheneman, Julian & Rogers, San Francisco, CA, Robert E. Shenfeld, Kelley, Drye & Warren LLP, Lisa G. Beckerman, Attorney at Law, David A. Friedman, Kasowitz, Benson, Torres & Friedman LLP, New York City, for Official Committee of Unsecured Creditors.

Leslie K. Berg, Office of United States Trustee, Detroit, MI, United States Trustee.

## OPINION ON DEBTOR'S MOTION TO STRIKE DESIGNATION OF RECORD ON APPEAL

ARTHUR J. SPECTOR, Bankruptcy Judge.

On February 22, 2001, the Court entered an "Order Setting Briefing Schedule and Oral Argument with Respect to Initial Dispositive Motions on Class 4 Claims for Pendency Interest, Fees, Costs and Expenses," submitted by the parties. It specifies that "[o]n or before March 16, 2001, the Debtor and the Movants shall serve and file such motions on any issues relating to pendency interest and fees, costs and expenses as the moving party believes is [sic] ripe for summary disposition arising out of the objections interposed by the Debtor with respect to Class 4 Claims Objections and the Responses thereto in Objection Nos. 89–94, 97, 100 and 110 (as to Inter Corporation only)." Order at pp. 1–2.[1] Any responses "in opposition to [such] ... [m]otions" were ordered to be "filed on or before April 6, 2001." *Id.* at p. 2.

Both the Debtor and its Class 4 creditors (hereafter, "Creditors") accepted the Court's invitation, filing motions for partial summary judgment within the time frame specified in the order. A hearing on the motions was held April 19th. The Court ruled from the bench, denying all motions. On May 3rd, it entered an order to that effect.

The Creditors appealed from (i) the April 19th ruling; (ii) the May 3rd order; and (iii) the November 30, 1999, order confirming the Debtor's reorganization plan. (Their theory with respect to the confirmation order is that it was "amended and modified" by the Court in disposing of the motions. Joint Notices of Appeal at p. 2 (attached as exhibits B and C to the Creditors' Brief in Opposition)). In connection with this appeal, the Creditors complied with a bankruptcy rule which requires an appellant to "file with the clerk [of the bankruptcy court] and serve on the appellee a designation of the items to be included in the record on appeal." F.R.Bankr.P. 8006. *See generally* F.R.Bankr.P. 9001(3) ("'Clerk' means bankruptcy clerk, if one has been appointed ....").

On May 23, 2001, the Debtor filed a motion seeking an order which would "strike the Designation in toto." Motion at p. 6. The Creditors objected to this motion. After hearing the oral arguments of counsel, the Court denied the motion. This opinion explains in greater detail the basis for our ruling.

### Discussion

The Debtor objects to the items in the "Designation" on the grounds that many "were not before the Court as part of the summary judgment record during its consideration of the [Creditors' motions] .... and likely were not considered by the Court in" ruling on such motions. Motion

---

1. The term "movants" is not defined in the order, but no doubt refers to the creditors whose claims are the subject of the Debtor's objections. As the order's title suggests, these creditors were grouped into "Class 4" of the Debtor's plan. This class includes various financial institutions which had extended prepetition credit to the Debtor. *See* Amended Joint Disclosure Statement with Respect to Amended Joint Plan of Reorganization at p. 51.

Another undefined term in the order, "pendency interest," carries the same meaning it did in a recent Court opinion, *viz.* "interest on ... allowed claims [which] ... accrue[s during] ... the time frame beginning with the commencement of [the Debtor's bankruptcy] ... case and ending on the [plan's] effective date." *In re Dow Corning Corp.*, 244 B.R. 678, 680 (Bankr.E.D.Mich.1999).

to Strike at pp. 5–6. In response, the Creditors point out that they are appealing not only from the orders denying their motions, but from the confirmation order as well. *See* Creditors' Brief in Opposition at p. 2. They also argue that an item may properly be designated under Rule 8006 so long as serves to promote "a full understanding of the parties' contentions on appeal." *Id.* at p. 5. Whether the bankruptcy court actually considered a particular item is irrelevant; it matters only whether the item was "*available* for consideration by the bankruptcy court." *Id.* at p. 7 (emphasis added).

In the Court's view, the Creditors' formulation of the standard for "designatability" under Rule 8006 makes more sense than does the Debtor's. But we think that both parties are mistaken in implicitly assuming that any such standard exists. Consider the following, more extensive excerpt from the rule:

> Within 10 days after filing the notice of appeal ..., the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 10 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal.

F.R.Bankr.P. 8006.

As can be seen, the rule provides the appellee with a remedy for perceived *under*inclusiveness—viz., the specifying of "additional items" for designation. But it is conspicuously silent on an appellee's recourse should it believe that the appellant's list is *over*inclusive. This silence suggests that the appellee has *no* recourse under such circumstances. *See In re Berge*, 37 B.R. 705, 708 (Bankr.W.D.Wis. 1983) ("Under the well-accepted rule of statutory construction stated as *expressio unius est exclusio alterius*, the express inclusion of one item of a class excludes others of the same class. The only kind of modification permitted under R. 8006 would thus be addition to, and not exclusion from, the record.").

Rule 8006 is also noteworthy in that it is directed at the clerk of the bankruptcy court, and provides no explicit role for the bankruptcy judge. *See* F.R.Bankr.P. 8006; *see also* F.R.Bankr.P. 8007(b) ("When the record is complete for purposes of appeal, the clerk shall transmit a copy thereof forthwith to the clerk of the district court ...."). In this respect, it differs markedly from its non-bankruptcy analog. *See* F.R.App.P. 10(b)(3)(C) (In situations where the appellant has ordered only a partial transcript, this provision affords the appellee the right "to move in the district court for an order requiring the appellant" to order additional portions of the transcript.); F.R.Civ.P. 10(d) (requiring the district court to approve a "statement of the case" if the parties opt to prepare such a statement and if it is "truthful."); F.R.App.P. 10(e)(1) ("If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.").

This discrepancy between F.R.App.P. 10 and Rule 8006 is all the more telling considering that the latter is modeled on the former. *See* F.R.Bankr.P. 8006, Advisory Committee Note (1983) ("This rule is an adaptation of Rule 10(b) FR App P."). Since the drafters of Rule 8006 were clearly aware of the provisions in F.R.App. P. 10 calling for involvement of the court, it is only logical to assume that omission of similar provisions in Rule 8006 reflects a conscious choice. This inference seems all the more justified given the fact that intervention of the bankruptcy judge *is* explicit-

ly permitted elsewhere under the bankruptcy rules. *See* F.R.Bankr.P. 8007(a) ("If the reporter does not file the transcript within the time allowed, the clerk ... shall notify the bankruptcy judge.").

Rule 8006 instructs that "the record on appeal *shall* include the items so designated by the parties." F.R.Bankr.P. 8006 (emphasis added). The highlighted term is generally understood to connote that which is mandatory, rather than permissive. *See, e.g., In re Revco D.S., Inc.,* 898 F.2d 498, 500–01 (6th Cir.1990). The obligatory nature of the "shall include" commandment, in conjunction with the rule's ministerial focus, renders implausible the proposition that an appellee—or the bankruptcy court—can second-guess the appellant regarding items to be included in the record on appeal. *See also* F.R.Bankr.P. 8007(c) ("If prior to the time the record is transmitted a party moves in the district court ... for any intermediate order, the clerk at the request of any party to the appeal *shall* transmit to the clerk of the district court ... a copy of the parts of the record as any party to the appeal shall designate.") (emphasis added).

Referring to a similarly worded precursor to Rule 8006, one court asserted that it "cannot reasonably be interpreted to grant absolute discretion to the parties" in deciding what items are to be included in the record on appeal. *In re Saco Local Dev. Corp.,* 13 B.R. 226, 228 (Bankr.D.Me.1981). But there is nothing "unreasonable" about interpreting Rule 8006 in such fashion. The dangers of an incomplete designation are obvious: By selectively omitting certain items, an appellant could create a misleading, distorted record on appeal.

The appellee's ability to "supplement" the record-to-be nicely addresses this problem.

In contrast, the downside of having "too many items" included in the record is hardly self-evident. Of course, nobody likes the idea of sifting through reams of documents. But appearances can be deceiving: It may often be the case, for example, that only a few pages from a huge transcript will require close attention on appeal. Indeed, record items may often be totally disregarded by the appellant himself when arguing his case. (This is especially likely, one would think, if the appellant simply got "carried away" when deciding what to designate, or if he made the considered choice to err on the side of overinclusiveness.) Thus the sheer size of the record is only a rough indicator of the amount of work in store for the appellate court and the appellee.

Even if an appellant *does* specifically rely on items which the appellee originally believed were irrelevant or otherwise objectionable, the latter party may decide that the purpose for which the appellant is citing them is acceptable. And if the appellee still wishes to object to the item, there is no reason why it cannot do so before the appellate court.[2] *See In re Indian Palms Assocs.,* 61 F.3d 197, 205 (3d Cir.1995) ("[T]he fact that a document is included in the relevant record does not mean that the ... reviewing district court judge[ ] is entitled to use it for any purpose.... [T]here are principles that limit its use."). Thus an appellant would appear to have nothing to gain by "packing" the record with superfluous items—particularly since it will be the party footing the bill for their inclusion. *See* F.R.Bankr.P. 8006

---

**2.** One plausible rationale would be that the appellee waived its right to object by failing to move to strike the appellant's designation. But, of course, this reasoning presupposes that the appellee *has* such a right. For the reasons explained in the text, this Court thinks that no such right to delete exists. We therefore see nothing particularly significant about the fact that an item is included in the record on appeal, other than that such inclusion affords the appellant the opportunity to rely on the item.

("Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated or, if the party fails to provide the copy, the clerk shall the copy at the party's expense. If the record designated by any party includes transcript of any proceeding ..., the party shall ... make satisfactory arrangements for payment of its costs.").

The other factor to consider is time. It is clear from a cursory review of the applicable rules that bankruptcy appeals are to be processed in expedited fashion. The notice of appeal must be filed "within 10 days of the date of the entry of the judgment, order, or decree appealed from." F.R.Bankr.P. 8002(a). *Cf.* F.R.App.P. 4(a)(1)(A) (allowing the notice of appeal from a civil judgment or order to be filed within 30 days). The designation of items to be included in the record must be made "[w]ithin 10 days after filing the notice of appeal." F.R.Bankr.P. 8006. Transcript requests are to be made "immediately after filing the designation" of such item for inclusion in the record. *Id.* The bankruptcy clerk is required to transmit the completed record on appeal "forthwith to the clerk of the district court." F.R.Bankr.P. 8007(b). The fact that the drafters of these rules contemplated a "fast-track" appellate process is difficult to square with the notion that this process can be put on hold while the bankruptcy court deliberates over an item's designation-worthiness. *See In re Standard Poultry Co.*, 5 B.R. 643, 646 (Bankr.E.D.Pa.1980) ("In reviewing any application to extend time concerning an appeal, bankruptcy courts must take cognizance of the purposes of the Bankruptcy Rules. Bankruptcy proceedings are designed to be expeditious, and those charged with interpreting the Rules are enjoined to construe them ... 'to secure the expeditious and economical administration of every bankrupt estate and the just, speedy and inexpensive determination of every proceeding in bankruptcy.' 13 *Collier on Bankruptcy* ¶ 803.03 at 8–42 (14th ed.1977).").

The Debtor complains that "the Commercial Committee or other[s] ... undoubtedly will seek to charge [the bankruptcy] ... estate" for the cost of providing the items designated by the Creditors. Motion at p. 6. Not surprisingly, the Debtor cited no authority for the proposition that the estate can be obliged to reimburse a party for expenses which—according to the Debtor—were needlessly incurred. *Compare* 11 U.S.C. § 330(a)(1)(B) ("[T]he court may award ... reimbursement for actual, *necessary* expenses." (emphasis added)). This argument is too insubstantial to counter the strong arguments against the motion.

For these reasons, the better view is that the bankruptcy court has no discretion under Rule 8006 to strike designated items from the record on appeal.[3] *See In re Liberty Trust Co.*, 130 B.R. 467, 470 (W.D.Tex.1991) (characterizing an appellee's option under Rule 8006 to designate additional items as a "matter of right"); *Berge*, 37 B.R. at 708; *cf. Treasure Imports, Inc. v. Henry Amdur & Sons, Inc.*, 127 F.2d 3, 4 (2d Cir.1942) ("[T]he Federal Rules [of Civil Procedure] do not permit the district court to prevent parties from including in the record any part of the occurrences below which they wish thus included."). *But see* 10 Collier on Bank-

---

**3.** This is true even when the designated item is patently *not* the kind of material contemplated by Rule 8006. There are probably ways to address frivolous designations, such as through contempt proceedings or sanctions under F.R.Bankr.P. 9011(c). Be that as it may, the rather remote possibility that a party will choose to abuse its "designation right" provides meager justification for reading into Rule 8006 a judicial power that its drafters appear not to have intended to confer.

ruptcy (15th ed. rev.2001), ¶ 8006.03[1] (dismissing as "probably incorrect" the proposition that "the appellee may only add to, but not subtract from, the record on appeal").[4] As the movant, the Debtor had the burden of persuading the Court that it has the authority under Rule 8006 (or some other source) to strike items designated by the Creditors for inclusion in the record on appeal. Because the Debtor failed to meet that burden, its motion to strike was denied.[5]

4. Rather than explaining how it reached this conclusion, the treatise was content to identify and summarize a case which granted a motion to strike. *See* 10 Collier on Bankruptcy (15th ed. rev.2001), at ¶ 8006.03[1] n. 7 (citing *In re Chateaugay Corp.*, 64 B.R. 990 (S.D.N.Y.1986)). However, with the exception of *Saco Local Development*, 13 B.R. 226 (Bankr.D.Me.1981), none of the cases cited by the Debtor and the Creditors (*Chateaugay* included) explicitly address the question of whether a court has the power to delete designated items. Since these cases only assume that such power exists, they are unpersuasive.

5. Since the Creditors did not argue to the contrary, the Court assumes that a motion to strike can properly be heard in the first instance by the bankruptcy court, rather than the district court. Rule 8006 provides no guidance on this issue, which is not surprising since—in this Court's view—*no* court can grant a motion to strike. But for what it's worth, a plausible argument could be made that the bankruptcy court in this district is "out of the picture" once the appeal has been docketed. *See* E.D.Mich.LR 83.50(d)(3) ("[A]fter the district clerk gives notice of the date on which the appeal was docketed, all papers … must be filed with the district clerk."). The parties did not indicate if or when the appeal was docketed.