2008 WY 122

**CATAMOUNT CONSTRUCTION,
a Wyoming corporation,
Appellant (Plaintiff),**

v.

**TIMMIS ENTERPRISES, a Wyoming corporation and Crayton Masonry, Inc., a Wyoming corporation, Appellees (Defendants).**

No. S–08–0023.

Supreme Court of Wyoming.

Oct. 9, 2008.

1154

Representing Appellant: Raymond W. Martin of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming.

Representing Appellee Crayton Masonry: Julie Nye Tiedeken of McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  General contractor Catamount Construction (Catamount) filed suit against several of its subcontractors, alleging defective work on a house in Cheyenne. The subcontractors filed motions to dismiss, asserting that Catamount had no standing to maintain its suit because it was defunct as the result of bankruptcy. The district court granted the subcontractors' motions. On appeal, we conclude that corporate existence is a matter of state law and, under Wyoming law, a dissolved corporation may sue and be sued. Catamount, therefore, has standing to maintain this action.

[¶ 2]  We reverse and remand.

## ISSUES

[¶ 3] Catamount presents the following issue on appeal:

Did the District Court err in dismissing Catamount Construction's lawsuit against the Appellees on the basis that, due to Catamount Construction's Chapter 7 bankruptcy, Catamount is a defunct corporation and therefore has no standing or capability to pursue a cause of action?

The only appellee appearing on appeal is Crayton Masonry, Inc. (Crayton).[1] Crayton states an additional issue:

Was the Complaint properly dismissed because it failed to allege a justiciable controversy?

## FACTS

[¶ 4] In 2002, Paul and Diane Steele contracted with Catamount to act as general contractor on a house in Cheyenne. In the process of building the home, Catamount engaged subcontractors to accomplish various aspects of the construction. Crayton was one of the subcontractors.

[¶ 5] On June 10, 2005, Catamount filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. The petition listed the Steeles and Crayton as creditors. The bankruptcy trustee reported the corporation had no assets to administer and the case was designated as fully administered and closed on November 7, 2005. At some point, Catamount was administratively dissolved by the Wyoming Secretary of State.

[¶ 6] The Steeles asserted that portions of the construction were defective, including some of the work performed by Crayton. They alleged that, as general contractor, Catamount was responsible for the work of its subcontractors. In anticipation of the Steeles' claims, Catamount initiated suit against several subcontractors, including Crayton, on August 2, 2007. Shortly thereafter, the Steeles filed an action against Catamount and its insurer.

[¶ 7] Crayton filed a motion to dismiss the complaint, asserting that Catamount did not have standing to sue, as it was a defunct corporation after its bankruptcy. Crayton further argued that Catamount's claims were not ripe because they depended on the Steeles having a valid claim against Catamount, which assertion was purely speculative. The district court dismissed Catamount's suit on the basis that it was a defunct corporation as a result of its bankruptcy and, therefore, did not have standing to sue. Catamount appealed.

## STANDARD OF REVIEW

[¶ 8] Although styled as a dismissal, the district court's ruling is properly reviewed as a summary judgment order because the court considered information outside of the pleadings. *Mathisen v. Thunder Basin Coal Co., LLC,* 2007 WY 161, ¶ 8, 169 P.3d 61, 63 (Wyo.2007). Summary judgments are governed by W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[¶ 9] A district court's summary judgment ruling is reviewed *de novo*, using the same materials and following the same standards as the district court. The evidence is considered from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Metz v. Laramie County School Dist. No. 1,* 2007 WY 166, ¶ 17, 173 P.3d 334, 339 (Wyo.2007); *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

## DISCUSSION

### 1. Standing

[¶ 10] The district court dismissed Catamount's complaint ruling that, as a result of

---

1. Originally there were five appellees/defendants in this case. Three of the five appellees, Markus Heating & Air Conditioning, LLC, Moore Foam, LLC, and The Plumbing Store, Inc., settled with Catamount and were dismissed. Timmis Enterprises did not file a brief on appeal.

its bankruptcy, it was a defunct corporation and did not have standing to pursue its action. Catamount argues on appeal that the district court's decision was erroneous as a matter of law.

[¶ 11] One of the primary cases supporting the district court's decision is *Liberty Trust Co. Employees Profit Sharing Trust v. Holt (In the Matter of Liberty Trust Co.)*, 130 B.R. 467 (W.D.Tex.1991). In *Liberty Trust*, the federal district court considered the issue of "whether a Chapter 7 corporate debtor has an existence or life outside of the bankruptcy estate." *Id.* at 470. It ruled:

> [t]his Court believes the Bankruptcy Court was correct in concluding that the Debtor in this instance could have no further existence. Title 11, United States Code, Section 727(a)² provides that a corporation or partnership is not entitled to discharge under Chapter 7. Only individuals are eligible for discharge. Congress' purpose in denying discharge to corporations and partnerships was to "avoid the trafficking in corporate shells and in bankruptcy partnerships." The consequence of denying discharge to corporations and partnerships in a Chapter 7 proceeding is to render such entities "defunct." The Court assumes that "defunct" depicts a status akin to that of a dissolved corporation or partnership, and so interprets the term in this case.

*Id.* at 471 (footnote added).

[¶ 12] Recognizing that corporations are creations of state law, the *Liberty Trust* court concluded that "under Texas law the [c]orporation is 'civilly dead'" and described the corporation's legal status as "a state of limbo," in which it could not assert rights to any causes of action. *Id.* at 472. The court declared the corporation *"de facto"* dissolved. *Id.* Other cases have followed the *Liberty Trust* ruling. *See, e.g., Thornton v. Mankovitch*, 277 Ga.App. 221, 626 S.E.2d 189 (2006); *U.S. Dismantlement Corp. v. Brown Assoc., Inc.*, 2000 WL 433971, No. Civ. A. 97–1309 (E.D.Pa. April 13, 2000).

[¶ 13] There are, however, cases that have reached the opposite conclusion. In *NLRB v. Better Building Supply Corp.*, 837 F.2d 377 (9th Cir.1988), the United States Court of Appeals for the Ninth Circuit noted that, pursuant to 11 U.S.C. § 727, a corporation is not entitled to discharge its debt in a liquidation proceeding under Chapter 7 of the Bankruptcy Code. *Id.* at 378–79, citing 6 Lawrence P. King, *Collier on Bankruptcy* ¶ 727–7 through 727–9 (15th ed. 2001). Thus, the NLRB debt survived the corporation's bankruptcy. *Id.*

[¶ 14] The court also ruled that Chapter 7 proceedings do not dissolve a corporation. Dissolution of a corporation can only be accomplished under state law. *Id.* at 379. *NLRB* stated that "[t]he drafters chose not to make corporate debt dischargeable so that corporations continuing to operate could not avoid previously incurred debt.... In adopting section 727(a)(1), Congress intended that corporate debt would survive Chapter 7 proceedings and be charged against the corporation when it resumed operations." *Id.* Thus, under the teachings of *NLRB*, a corporation continues to exist after Chapter 7 bankruptcy proceedings and, consequently, would retain standing to sue. *See also, Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F.Supp.2d 1180, 1183–84 (N.D.Cal.2000).

[¶ 15] A Texas bankruptcy court expressly rejected the *Liberty Trust* reasoning in *In re CVA General Contractors, Inc.*, 267 B.R. 773, 782 n. 10 (Bkrtcy.W.D.Tex.2001). The bankruptcy court agreed with *NLRB* that a bankruptcy liquidation does not effect a dissolution of the corporation. Moreover, *CVA* indicated that *Liberty Trust* did not correctly interpret Texas corporation law. *CVA* stated that Texas law provides that "a dissolved corporation continues its corporate existence for a period of three years from the date of dissolution, among other reasons, to prosecute or defend 'in its corporate name any action or proceeding by or against the dissolved corporation' and to permit 'the survival of any existing claim by or against the dissolved corporation.'" *Id.*, quoting TEX.

---

2. Section 727(a) states in relevant part:
 (a) The court shall grant the debtor a discharge, unless—

(1) the debtor is not an individual[.]

BUS.CORP.ACT, Art. 7.12A(1)-(2) (West Supp.2001). Thus, according to *CVA*, a Texas corporation continues to exist for a time after dissolution for limited purposes, including to pursue legal actions, an important detail overlooked by *Liberty Trust. Id.*

[¶ 16] In *F.P. Woll & Co. v. Fifth and Mitchell Street Corp.*, 2001 WL 34355652, No. Civ.A. 96–CV–5973 (E.D.Pa. Dec.13, 2001), the United States district court concluded that the *NLRB* line of cases was correct.

When a corporation files for bankruptcy under Chapter 7 of the Bankruptcy Code, a trustee is appointed who arranges for the orderly distribution of the corporation's assets amongst its creditors. *See* 11 U.S.C. § 704 (2001). The corporation is thereby liquidated. Eaton argues that judgment should not be entered against it in this case because a corporation which has been liquidated under Chapter 7 is de facto dissolved, and therefore lacks the capacity to sue and be sued.

The question of Eaton's capacity to sue and be sued after liquidation is decided under Pennsylvania law. *See* FED. R. CIV. P. 17(b) (providing that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."); 6 Lawrence P. King, *Collier On Bankruptcy* ¶ 727.01[3] (15th Ed.2001) ("After liquidation, any dissolution of the corporation ... must be effectuated under state law, since the Code does not provide for dissolution of corporations[.]") Pennsylvania has a "detailed statutory scheme for voluntary corporate dissolution. In particular, Articles of Dissolution must be filed with the Department of State." *Atlantic Richfield Co. v. Blosenski*, 847 F.Supp. 1261, 1282 (E.D.Pa. 1994) (citations omitted). A corporation is not protected from suit until two years after the date of its dissolution. *See* 15 Pa.C.S.A. § 1979(a)(2) (2001). Because Eaton has not dissolved itself under Pennsylvania law, it retains the capacity to sue and be sued.

The legislative history of Section 727(a)(1) of the Bankruptcy Code-which provides that, unlike an individual, a corporation that files under Chapter 7 is not entitled to a discharge of its debts-supports the conclusion that a corporation which has been liquidated in a bankruptcy proceeding is not thereby dissolved. *See* 11 U.S.C. § 727(a)(1) (2001). Both the House and Senate Reports state that the denial of discharge is meant to "avoid trafficking in corporate shells, a form of bankruptcy fraud." H.R.Rep. No. 595, 95th Cong. 1st Sess.384 (1977) [U.S.Code Cong. & Admin.News 1977, 5963]. *See also* S.Rep. No. 989, 95th Cong. 2nd Sess. 130 (1978) [U.S.Code Cong. & Admin.News 1978, 5787]. This is because "a corporation with a substantial tax loss but with all of its debts discharged would be an attractive vehicle to shield profits." *U.S. Dismantlement Corp. v. Jeffrey M. Brown Assoc., Inc.*, 97–CV–1309, 2000 WL 433971, at 2 (E.D.Pa.Apr.13, 2000). There would be no traffic in corporate shells if those shells were de facto dissolved, and therefore lacked the capacity to act. The shell of a bankrupt corporation would only be attractive if it were still alive, and able to resume business free of its obligations. This is likely why Congress acted affirmatively, as part of the Bankruptcy Reform Act of 1978, to deny discharge to corporations.

The relevant case law also supports the conclusion that "defunct" corporations are not dissolved and therefore retain the capacity to sue and be sued. *See Nat'l Labor Relations Bd. v. Better Bldg. Supply Corp.*, 837 F.2d 377, 379 (9th Cir.1988) (corporate debt could be charged against liquidated corporation when it resumed operations); *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 103 F.Supp.2d 1180, 1183–1184 (N.D.Cal.2000) (corporation's bankruptcy did not bar suit); *DeLeon v. Beneficial Constr. Co.*, 55 F.Supp.2d 819, 824 (N.D.Ill.1999) (plaintiff could sue corporation as soon as its bankruptcy case was closed, despite fact that corporation was "insolvent and certainly judgment-proof"); *In re CVA General Contractors, Inc.*, 267 B.R. 773, 782 n. 10 (Bankr. W.D.Tx.2001) (liquidation did not effect dissolution). *But see, e.g., U.S. Dismantlement v. Jeffrey M. Brown Assoc., Inc.*, 97–

CV–1309, 2000 WL 433971, at 4 (E.D.Pa. Apr.13, 2000). In *Better Building Supply Corporation*, the Ninth Circuit rejected the argument raised by Eaton in this case that Congress denied discharge to corporations because discharge would be pointless, since Chapter 7 proceedings effect dissolution. *See Better Bldg. Supply Corp.*, 837 F.2d at 379. Instead, that court found, corporations are denied discharge to prevent them from resuming business free of debt. *Id.* The debt survives bankruptcy, and the corporation survives too, because the debt cannot survive without a debtor. *Id.* at 2–4.

[¶ 17] We agree with *NLRB* and *Woll.* Corporate existence is clearly a matter of state law. Bankruptcy does nothing to change the existence of a corporation. The fact that Congress has decided that a corporation does not obtain a discharge of its debts through a Chapter 7 bankruptcy supports the finding that the Bankruptcy Code does not affect a corporation's legal existence or capacity to sue or be sued. If the corporation were "defunct" or *de facto* dissolved and incapable of maintaining or defending an action, as the *Liberty Trust* case concluded, it would be unnecessary to deny it a discharge of corporate debt.

[¶ 18] Furthermore, even if we followed the *Liberty Trust* analysis and declared that a corporation was *de facto* dissolved after Chapter 7 bankruptcy, Wyoming law would still allow the dissolved corporation to maintain a suit. Wyo. Stat. Ann. § 17–16–1405 (LexisNexis 2007) states:

(a) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

(i) Collecting its assets;

(ii) Disposing of its properties that will not be distributed in kind to its shareholders;

(iii) Discharging or making provision for discharging its liabilities;

(iv) Distributing its remaining property among its shareholders according to their interests; and

(v) Doing every other act necessary to wind up and liquidate its business and affairs.

**(b) Dissolution of a corporation does not:**

(i) Transfer title to the corporation's property;

(ii) Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;

(iii) Subject its directors or officers to standards of conduct different from those prescribed in article 8;

(iv) Change quorum or voting requirements for its board of directors or shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;

**(v) Prevent commencement of a proceeding by or against the corporation in its corporate name;**

(vi) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or

(vii) Terminate the authority of the registered agent of the corporation.

(emphasis added). *See also, Lusk Lumber Co. v. Indep. Producers Consol.*, 43 Wyo. 191, 299 P. 1044, 1050 (Wyo.1931) (holding that suit against a corporation may be maintained after the corporation is administratively dissolved). Thus, even if the bankruptcy had triggered a *de facto* dissolution of the corporation and even though Catamount has been administratively dissolved by the Wyoming Secretary of State, it can still sue and be sued. The district court's ruling that Catamount did not have standing to maintain its suit was erroneous.[3]

### 2. *Justiciable Controversy*

[¶ 19] We only consider justiciable controversies. "[A] justiciable controversy is

---

**3.** Our decision here is limited to the narrow question of whether Catamount has standing to maintain its suit. We do not, and cannot, offer any opinion as to whether the specific claims at issue in this case were determined within the bankruptcy.

defined as a controversy fit for judicial resolution." *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 9, 79 P.3d 500, 505 (Wyo.2003). *Reiman Corp. v. City of Cheyenne,* 838 P.2d 1182, 1186 (Wyo.1992). In other words, there must be a violation of a genuine, existing right; we will not issue advisory opinions addressing future speculative matters. *Cox,* ¶ 10, 79 P.3d at 505; *Cranston v. Thomson,* 530 P.2d 726, 728–29 (Wyo.1975); *Brimmer v. Thomson,* 521 P.2d 574 (Wyo.1974).

[¶ 20] Crayton contends that this case does not present a justiciable controversy because the complaint merely alleges claims that may or may not arise in the future. Crayton points out that Catamount's complaint states that the Steeles have asserted claims which Catamount and Crayton both deny. Crayton argues there is no guarantee that Catamount will be liable and suffer any damages enabling it to assert its claims against Crayton.

[¶ 21] At the time Catamount filed suit against Crayton and the other subcontractors, the Steeles had not yet filed a complaint against Catamount. However, the record indicates that shortly thereafter, the Steeles did file suit against Catamount. Catamount claims that its subcontractors, including Crayton, are ultimately responsible for the Steeles' damages, if any are proven. Although it may be appropriate to consolidate this case with the action between the Steeles and Catamount, there is clearly a justiciable controversy presented here.

[¶ 22] Reversed and remanded to the district court for further proceedings consistent with this opinion.